**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM NORMAN BROOKS, III** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C.A. NO.** |
| | ) | |
| **TRANS UNION, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**CLASS ACTION COMPLAINT**

## I.     PRELIMINARY STATEMENT

1.      This is a consumer class action based upon Defendant Trans Union, LLC's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") with respect to its response to consumer disputes regarding the accuracy and/or completeness of bankruptcy information included in consumer files.

2.      Defendant deprives consumers of their rights under the FCRA by failing to use all of the information at its disposal about bankruptcy records when conducting reinvestigations, and as a result failing to correct objectively inaccurate bankruptcy record information.

3.      Defendant's practices harm consumers by failing to conduct reasonable reinvestigations of disputed bankruptcy information, and prejudicing their prospective creditors with inaccurate, adverse information indicating that the individual has filed for bankruptcy when they in fact have not.

## II.   JURISDICTION & VENUE

4.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

6.      Plaintiff William Norman Brooks III is an adult individual who resides in San Diego County, California.

7.      Defendant Trans Union, LLC ("Trans Union" or "Defendant") is a consumer reporting agency that regularly conducts business in the Commonwealth of Pennsylvania, and which has a principal place of business in Crum Lynne, Pennsylvania.

## IV.   FACTUAL ALLEGATIONS

*Defendant's Use of Bankruptcy Record Information and Metro 2 Format*

8.      Defendant is one of the "Big Three" consumer reporting agencies in the United States, and is regulated by the FCRA.

9.      The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10.     To further the FCRA's purpose of ensuring that credit transactions are based on fair and accurate information, Congress include a mechanism in the FCRA by which consumers may dispute inaccurate of incomplete information in their credit files.

11.     When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item of information contained in [his or her] file," the CRA must "conduct a

2

reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A).

12.     Trans Union uses standardized procedures for conducting reinvestigations of consumer disputes, and for communicating with furnishers regarding consumer disputes.

13.     In part to assist in compliance with FCRA obligations, the credit data industry has adopted a uniform data format for exchanging information between furnishers of information (such as banks, credit card companies, and other retailers) and credit bureaus, known as "Metro 2."[1]

14.     The Metro 2 format is used to exchange information about the details of consumers' disputes, including providing standardized codes that furnishers can use to instruct credit bureaus to delete certain items of information from consumers' credit files.

15.     Trans Union uses the Metro 2 format to communicate with furnishers regarding consumer disputes, and to receive responses from furnishers.

16.     Trans Union regularly uses the Metro 2 format to send communications to data furnishers regarding consumers' disputes of information, including regarding the nature of the consumer's dispute.

17.     Trans Union also regularly receives in response communications from data furnishers which contain Metro 2 codes.

18.     Metro 2 format includes specific codes indicating that a bankruptcy notation should be deleted from a consumer's file.

---

[1]     *See* Consumer Data Industry Association, "Metro 2 Format For Credit Reporting" https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ (last visited January 6, 2022).

19.     Separately from bankruptcy information obtained in Metro 2 format from furnishers, Trans Union also obtains records of bankruptcy filings for inclusion in consumers' credit files, to be sold in the "Public Records" section of a Trans Union credit report.

20.     Thus, Trans Union regularly obtains and maintains bankruptcy information from multiple sources in connection with consumers' files.

21.     Trans Union nevertheless fails to use all of the information available in its systems to conduct reinvestigations when consumers dispute the completeness and/or accuracy of consumer disputes of bankruptcy information.

22.     As a result, Trans Union fails to remove inaccurate bankruptcy information from consumers' files.  Trans Union's failure to use all available information during its reinvestigations harmed Plaintiff and, upon information and belief, hundreds or thousands of consumers like him across the United States, and undercut the healthy functioning of the consumer credit system by providing inaccurate and misleading credit history information about consumers to potential creditors and service providers.

*The Experience of Plaintiff William Norman Brooks, III*

23.     Plaintiff, William Norman Brooks, III, has never filed for bankruptcy.

24.     Plaintiff has held various accounts with Bank of America, N.A. ("BofA") over the past ten years, including but not limited to a line of credit and a credit card.

25.     On January 3, 2020, an unrelated individual named William E. Brooks filed for a Chapter 13 bankruptcy in Mobile, Alabama.  *See* Case No. 20-10014 (Bkry. S.D. Ala.) at ECF 1 (herein, the "Alabama Bankruptcy").

26.     The publicly available record of the Alabama Bankruptcy filing identifies one of the debtors as "William Eugene Brooks."  *Id*.

27.    Plaintiff has never lived in Alabama.  Furthermore, his middle name is "Norman," and he consistently uses the generational suffix "III."

28.    No BofA accounts appear in the publicly available record of the Alabama Bankruptcy.

29.    On or about January 5, 2020, BofA communicated to Trans Union using the Metro 2 format including codes indicating that Trans Union should include bankruptcy notations in Plaintiff's file in connection with the tradelines related to his line of credit and the credit card.

30.    On or about January 15, 2020, Plaintiff requested a copy of his Trans Union file.

31.    In response to his request, Trans Union provided Plaintiff with a "personal credit report" dated January 15, 2020 (the "January 15, 2020 Report").

32.    The January 15, 2020 Report listed the BofA credit card account with the remark "CHAPTER 13 BANKRUPTCY; CLOSED BY CREDIT GRANTOR."

33.    The January 15, 2020 Report also listed Plaintiff's credit cards with Macy's and The Home Deport with the same bankruptcy remark.

34.    Trans Union did not include the bankruptcy remark any other accounts on the January 15, 2020 Report, including the BofA line of credit.

35.    Trans Union did not include any reference to the Alabama Bankruptcy in any "Public Records" section of the January 15, 2020 report.

36.    On January 16, 2020, Plaintiff sent Trans Union a detailed letter disputing its reporting of the bankruptcy remark on the BofA, Macy's and Home Depot accounts, specifically stating that the Alabama Bankruptcy did not pertain to him and explaining the differences between his personal information and that of the true bankruptcy filer.

37.     On or about January 29, 2020, Trans Union sent Plaintiff the results of its reinvestigation of Plaintiff's disputes.

38.     As a result of Plaintiff's dispute, Trans Union removed the bankruptcy remark from the BofA credit card account, and confirmed that no bankruptcy remark appeared on the BofA line of credit tradeline.

39.     Trans Union nevertheless subsequently placed a bankruptcy remark in Plaintiff's file in connection with the BofA line of credit at some point after January 29, 2020 and before March 11, 2020.

40.     On or about March 11, 2020, believing that references to the inaccurate bankruptcy record had been removed from his credit files, Plaintiff applied for a personal loan.

41.     On March 11, 2020, Trans Union sold a consumer report about Plaintiff to a third party in connection with Plaintiff's application for credit which included the inaccurate bankruptcy remark in connection of the BofA line of credit.

42.     As a result of the inaccurate appearance of the bankruptcy record reported by Trans Union, Plaintiff's application for credit was denied.

43.     Upon information and belief, Trans Union's response to Plaintiff's dispute and its subsequent reporting of bankruptcy information about Plaintiff was pursuant to its usual policies and procedures.

44.     By following its standardized procedures that it applied to Plaintiff, Trans Union has repeatedly continuously acted, and continues to act, in reckless or conscious disregard of Plaintiff's rights. Trans Union's actions, and its inaction, continue to cause great distress to Plaintiff. As a direct result of Trans Union's conduct, and in addition to the credit denial discussed

above, Plaintiff suffered anguish, embarrassment, anxiety, distress, feelings of hopelessness, and sleepless nights.

## V.      CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action on behalf of the following Class:

> All persons with an address in the United States and its Territories, during the period two years prior to the filing of the Complaint and continuing through the resolution of the case, to whom Defendant sent reinvestigation results removing a bankruptcy remark from a tradeline as a result of the consumer's dispute, and whom Trans Union subsequently sold to a third party a consumer report containing a bankruptcy remark on another tradeline from the same furnisher as the previously removed bankruptcy remark.

46.     Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

47.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

48.     **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals.  The common legal and factual questions include, among others: (1) whether Trans Union maintains reasonable procedures to prevent the reappearance of information that was previously deleted as a result of the dispute, (2) whether Trans Union maintains reasonable procedures to assure maximum possible accuracy of bankruptcy on its consumer reports; and (3) whether Trans Union acted willfully or negligently.

49.     **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of each Class Member.  Plaintiff has the same claims for relief that he seeks for absent Class Members.

50.     **Adequacy**.  **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

51.     **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.   CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM)
### 15 U.S.C. § 1681e(b)

52.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

53.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for willfully and negligently failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On Count I:

1.     An order certifying the case as a class action on behalf of the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2.     An order entering judgment in favor of Plaintiff and the Class and against Defendant for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3.     An order entering judgment in favor of Plaintiff and the Class and against Defendant for actual damages pursuant to 15 U.S.C. § 1681o;

4.     An order granting costs and reasonable attorneys' fees;

5.     An award of pre-judgment and post-judgment interest as provided by law; and

6.     Such other relief as the Court deems just and proper.

## TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE:  January 6, 2022                  By:   **FRANCIS MAILMAN SOUMILAS, P.C.**

*/s/ James A. Francis*
JAMES A. FRANCIS
LAUREN KW BRENNAN
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

TAMMY HUSSIN*
**HUSSIN LAW FIRM**
1596 N. Coast Hwy 101
Encinitas, CA 92024
Tel. 877.677.5397
Fax 877.667.1547
Tammy@HussinLaw.com

*Attorneys for Plaintiff*

**Pro Hac Vice Application forthcoming*

10