## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM NORMAN BROOKS, III** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **C.A. NO. 2:22-CV-00048** |
| ) | |
| **TRANS UNION, LLC,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |
| ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

### I.     PRELIMINARY STATEMENT

1.     This is a consumer class action based upon Defendant Trans Union, LLC's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.* ("CCRAA").

2.     Trans Union has a decades-long and deeply entrenched practice of misreporting bankruptcy information on the credit reports of consumers who have never filed for bankruptcy. *See Clark v. Trans Union Corporation and Trans Union, LLC*, C.A. No.8:00-1219-22(D.S.C. 2000) Doc. No. 332 at 2 (approving nationwide settlement); *Clark v. Experian Info. Sols, Inc. et al.*, No. 8:00-1210-22, 2002 WL 2005709, at *4 (D.S.C. June 26, 2002) (following consolidation, certifying FCRA claims of class of consumers about whom Trans Union and other Big Three CRAs reporting bankruptcy information despite the fact that they had not filed for bankruptcy). That practice has led to two (2) of the largest FCRA class action settlements in history, *Clark,* and *Hernandez, et al. v. Experian Information Sols., Inc., et al.*, No. 05-CV-1070 DOC (MLGx) (C.D.

1

Cal.) (class action settlement *aff'd sub nom Radcliffe v. Hernandez*, 794 F. App'x 605 (9th Cir. 2019)). Through that litigation, Trans Union learned of the widespread and systemic nature of its bankruptcy misreporting practices, the impact of these practices on consumers and an effective methodology for preventing it from happening again, namely cross-referencing any tradeline bankruptcy information with the Public Records section of the credit report (defined below). Notwithstanding that institutional knowledge, it allows the practice to continue to this day.

3.      Defendant's practice harms consumers by defaming them as financially insolvent and/irresponsible to the lending world.

4.      Defendant further harms consumers and deprives them of their rights under the FCRA and CCRAA when those consumers dispute the defamatory information by failing to use all of the information at its disposal when conducting reinvestigations, failing to correct the objectively inaccurate bankruptcy record information, and then reinserting it back on their reports even when it initially determines the information to be inaccurate and deletes it.

## II.      **JURISDICTION & VENUE**

4.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

5.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.      **PARTIES**

6.      Plaintiff William Norman Brooks III is an adult individual who resides in San Diego County, California.

7.      Defendant Trans Union, LLC ("Trans Union" or "Defendant") is a consumer reporting agency that regularly conducts business in the Commonwealth of Pennsylvania, and which has a principal place of business in Crum Lynne, Pennsylvania.

## IV.    FACTUAL ALLEGATIONS

*Defendant's Use of Bankruptcy Record Information and Metro 2 Format*

8.    Defendant is one of the "Big Three" consumer reporting agencies in the United States, and is regulated by the FCRA.

9.    Trans Union regularly conducts business in the State of California, and is regulated by the CCRAA in connection with the reports it sells about consumers located in California.

10.    The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).  It requires consumer reporting agencies to utilize reasonable procedures to assure "maximum possible accuracy" when disseminating consumer reports, a requirement that Trans Union willfully violates when it reports bankruptcy history about consumers who have never filed.

11.    The CCRAA is substantially based on the FCRA, and the two laws are interpreted in tandem.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010).

12.    To further the FCRA and CCRAA purposes of ensuring that credit transactions are based on fair and accurate information, the FCRA and CCRAA each include a mechanism by which consumers may dispute inaccurate of incomplete information in their credit files.

13.    When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item of information contained in [his or her] file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). *See also* Cal. Civ. Code § 1785.16.

14.     Trans Union uses standardized procedures for conducting reinvestigations of consumer disputes, and for communicating with furnishers regarding consumer disputes.

15.     In part to assist in compliance with FCRA and CCRAA obligations, the credit data industry has adopted a uniform data format for exchanging information between furnishers of information (such as banks, credit card companies, and other retailers) and credit bureaus, known as "Metro 2."[1]

16.     The Metro 2 format is used to exchange information about the details of consumers' disputes, including providing standardized codes that furnishers can use to instruct credit bureaus to delete certain items of information from consumers' credit files.

17.     Trans Union uses the Metro 2 format to communicate with furnishers regarding consumer disputes, and to receive responses from furnishers.

18.     Trans Union regularly uses the Metro 2 format to send communications to data furnishers regarding consumers' disputes of information, including regarding the nature of the consumer's dispute.

19.     Trans Union also regularly receives in response communications from data furnishers which contain Metro 2 codes.

20.     Metro 2 format includes specific codes indicating that a bankruptcy notation should be deleted from a consumer's file.

21.     Separately from bankruptcy information obtained in Metro 2 format from furnishers, Trans Union also obtains records of bankruptcy filings for inclusion in consumers' credit files, to be sold in the "Public Records" section of a Trans Union credit report.  If a consumer

---

[1]      *See* Consumer Data Industry Association, "Metro 2 Format For Credit Reporting" https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ (last visited January 6, 2022).

files for bankruptcy, that filing is contained in the Public Records section.  Thus, if there is no bankruptcy filing set forth in the Public Records section of a credit report, it is presumptive information that the consumer did not filed for bankruptcy.  In *Clark* and *Hernandez*, which involved Trans Union's misreporting of bankruptcy information about a co-obligor's filing on a non-filing consumer, Trans Union learned that when a credit report contains bankruptcy tradeline information, it should cross-reference that data with the Public Records section to see whether the consumer actually filed before selling the report.

22.    Trans Union regularly obtains and maintains bankruptcy information from multiple sources in connection with consumers' files.

23.    Trans Union nevertheless fails to use all of the information available in its systems to conduct reinvestigations when consumers dispute the completeness and/or accuracy of consumer disputes of bankruptcy information.

24.    As a result, Trans Union fails to remove inaccurate bankruptcy information from consumers' files.

25.    Trans Union is well aware of its duties under the FCRA and associated state laws in connection with the reporting of bankruptcy information about consumers and with responding to consumer disputes regarding bankruptcy information, having been sued in *Clark* and *Hernandez*.

26.    Trans Union's failure to utilize the methods learned from *Clark* and *Hernandez* to prevent ongoing bankruptcy misreporting, and failure to use all available information during its reinvestigations harmed Plaintiff and many other consumers across the United States. Trans Union's conduct undercuts the healthy functioning of the consumer credit system by providing

inaccurate and misleading credit history information about consumers to potential creditors and service providers.

*The Experience of Plaintiff William Norman Brooks, III*

27.     Plaintiff, William Norman Brooks, III, has never filed for bankruptcy.

28.     Plaintiff has held various accounts with Bank of America, N.A. ("BofA") over the past ten years, including but not limited to a line of credit and a credit card.

29.     On January 3, 2020, an unrelated individual named William E. Brooks filed for a Chapter 13 bankruptcy in Mobile, Alabama.  *See* Case No. 20-10014 (Bkry. S.D. Ala.) at ECF 1 (herein, the "Alabama Bankruptcy").

30.     The publicly available record of the Alabama Bankruptcy filing identifies one of the debtors as "William Eugene Brooks."  *Id.*

31.     Plaintiff has never lived in Alabama.  Furthermore, his middle name is "Norman," and he consistently uses the generational suffix "III."

32.     No BofA accounts appear in the publicly available record of the Alabama Bankruptcy.

33.     On or about January 5, 2020, BofA communicated to Trans Union using the Metro 2 format including codes indicating that Trans Union should include bankruptcy notations in Plaintiff's file in connection with the tradelines related to his line of credit and the credit card.

34.     On or about January 15, 2020, Plaintiff requested a copy of his Trans Union file.

35.     In response to his request, Trans Union provided Plaintiff with a "personal credit report" dated January 15, 2020 (the "January 15, 2020 Report").

36.     The January 15, 2020 Report listed the BofA credit card account with the remark "CHAPTER 13 BANKRUPTCY; CLOSED BY CREDIT GRANTOR."

37.     The January 15, 2020 Report also listed Plaintiff's credit cards with Macy's and The Home Deport with the same bankruptcy remark.

38.     Trans Union did not include the bankruptcy remark on any other accounts on the January 15, 2020 Report, including the BofA line of credit.

39.     Trans Union did not include any reference to the Alabama Bankruptcy in any "Public Records" section of the January 15, 2020 report.

40.     On January 16, 2020, Plaintiff sent Trans Union a detailed letter disputing its reporting of the bankruptcy remark on the BofA, Macy's and Home Depot accounts, specifically stating that the Alabama Bankruptcy did not pertain to him and explaining the differences between his personal information and that of the true bankruptcy filer.

41.     On or about January 29, 2020, Trans Union sent Plaintiff the results of its reinvestigation of Plaintiff's disputes.

42.     As a result of Plaintiff's dispute, Trans Union removed the bankruptcy remark from the BofA credit card account, and confirmed that no bankruptcy remark appeared on the BofA line of credit tradeline.

43.     Trans Union nevertheless subsequently placed a bankruptcy remark in Plaintiff's file in connection with the BofA line of credit at some point after January 29, 2020 and before March 11, 2020.

44.     On or about March 11, 2020, believing that references to the inaccurate bankruptcy record had been removed from his credit files, Plaintiff applied for a personal loan.

45.     On March 11, 2020, Trans Union sold a consumer report about Plaintiff to CoreLogic in connection with Plaintiff's application for credit which reinserted the inaccurate bankruptcy remark in connection of the BofA line of credit.

46.     As a result of the inaccurate appearance of the bankruptcy record reported by Trans Union, Plaintiff's application for credit was denied.

47.     Upon information and belief, Trans Union's response to Plaintiff's dispute and its subsequent reporting of bankruptcy information about Plaintiff was pursuant to its usual policies and procedures.

48.     By following its standardized procedures that it applied to Plaintiff, Trans Union has repeatedly continuously acted, and continues to act, in reckless or conscious disregard of Plaintiff's rights. Trans Union's actions, and its inaction, continue to cause great distress to Plaintiff. As a direct result of Trans Union's conduct, and in addition to the credit denial discussed above, Plaintiff suffered anguish, embarrassment, anxiety, distress, feelings of hopelessness, and sleepless nights.

## V.    CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action on behalf of the following Classes:

(a)  **Inaccurate Bankruptcy Class:**  All persons with an address in the United States and its Territories, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, about whom Defendant sold to a third party a consumer report containing a reference to a bankruptcy, and the individual who was the subject of the report had not filed for bankruptcy.

(b)  **Inaccurate Bankruptcy California Subclass:** All persons with an address in the State of California, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, about whom Defendant sold to a third party a consumer report containing a reference to a bankruptcy, and the individual who was the subject of the report had not filed for bankruptcy.

(c)  **Tradeline-only Bankruptcy Class**: All persons with an address in the United States and its Territories, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, about whom Defendant sold to a third party a consumer report containing a bankruptcy remark on a tradeline, but with no reference to a bankruptcy record in the Public Record section of the same report.

(d) **Tradeline-only Bankruptcy California Subclass**: All persons with an address in the State of California, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, about whom Defendant sold to a third party a consumer report containing a bankruptcy remark on a tradeline, but with no reference to a bankruptcy in the Public Record section of the same report.

(e) **Reinserted Bankruptcy Class**: All persons with an address in the United States and its Territories, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, for whom Defendant removed a bankruptcy record from the consumer's file as a result of a dispute, and about whom Defendant subsequently sold to a third party a consumer report containing a reference to the same bankruptcy filing.

(f) **Reinserted Bankruptcy California Subclass**: All persons with an address in the State of California, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, for whom Defendant removed a bankruptcy record from the consumer's file as a result of a dispute, and about whom Defendant subsequently sold to a third party a consumer report containing a reference to the same bankruptcy filing.

(g) **Reinserted Bankruptcy Tradeline Subclass** All persons with an address in the United States and its Territories, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, for whom Defendant removed a bankruptcy remark from a tradeline as a result of a consumer's dispute, and whom Trans Union subsequently sold to a third party a consumer report containing a bankruptcy remark on another tradeline from the same furnisher as the previously removed bankruptcy remark.

(h) **Reinserted Bankruptcy Tradeline California Subclass**: All persons with an address in the State of California, during the period five years prior to the filing of the Complaint and continuing through the resolution of the case, for whom Defendant removed a bankruptcy remark from a tradeline as a result of a consumer's dispute, and whom Trans Union subsequently sold to a third party a consumer report containing a bankruptcy remark on another tradeline from the same furnisher as the previously removed bankruptcy remark.

50.    Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

51.    **Numerosity.   Fed. R. Civ. P. 23(a)(1).**  The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

52.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals.   The common legal and factual questions include, among others: (1) whether Trans Union maintains reasonable procedures to prevent the reappearance of information that was previously deleted as a result of the dispute, (2) whether Trans Union maintains reasonable procedures to assure maximum possible accuracy of bankruptcy on its consumer reports; and (3) whether Trans Union acted willfully or negligently.

53.    **Typicality.  Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of each Class Member.  Plaintiff has the same claims for relief that he seeks for absent Class Members.

54.    **Adequacy**.  **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

55.    **Predominance and Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would

prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

### VI.   CAUSES OF ACTION

### COUNT I
### CLASS CLAIM
### 15 U.S.C. § 1681e(b)
*Plaintiff Brooks individually and on behalf of the Inaccurate Bankruptcy Class, Tradeline-only Bankruptcy Class, Reinserted Bankruptcy Class, and Reinserted Bankruptcy Tradeline Subclass*

56.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

57.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for willfully and negligently failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

### COUNT II
### CLASS CLAIM
### 15 U.S.C. § 1681i(a)(5)(B)
*Plaintiff Brooks individually and on behalf of the Reinserted Bankruptcy Class and Reinserted Bankruptcy Tradeline Subclass*

58.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

59.     Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for willfully and negligently reinserting previously deleted information into a consumer's file without receiving a certification of completeness and/or accuracy, and without providing the required notice to the consumer, in violation of 15 U.S.C. § 1681i(a)(5)(B).

**COUNT III**
**CLASS CLAIM**
**Cal Civ. Code § 1785.25(a)**
*Plaintiff Brooks individually and on behalf of the Inaccurate Bankruptcy California Subclass,*
*Tradeline-only Bankruptcy California Subclass, Reinserted Bankruptcy California Subclass, and*
*Reinserted Bankruptcy Tradeline California Subclass*

60.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

61.     Trans Union is a consumer credit reporting agency as defined by the CCRAA, and was required to adhere to the requirements of the CCRAA with respect to reports sold about individuals located in the State of California.

62.     Pursuant to section 1785.25(a), Defendant is liable for willfully and negligently failing to follow reasonable procedures to assure the maximum possible accuracy of bankruptcy information included on consumer reports.

63.     Because Plaintiff and the California Subclasses set forth above will seek credit in the future, and because Defendant may continue to improperly report inaccurate bankruptcy information to their prospective creditors on consumer credit reports, there is a real and immediate threat that Plaintiff and the California Subclasses will suffer the same injury in the future.

**COUNT IV**
**INDIVIDUAL CLAIM**
**Cal. Civ. Code § 1785.16(c)**
*Plaintiff Brooks Individually*

64.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

65.     Pursuant to section 1785.16(c) of the CCRAA, Defendant is liable for willfully and negligently reinserting previously deleted information into a consumer's file without

receiving a certification of completeness and/or accuracy, and without providing the required notice to the consumer.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

On Counts I and II:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An order entering judgment in favor of Plaintiff and the Classes and against Defendant for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3. An order entering judgment in favor of Plaintiff and the Classes and against Defendant for actual damages pursuant to 15 U.S.C. § 1681o;

4. An order granting costs and reasonable attorneys' fees;

5. An award of pre-judgment and post-judgment interest as provided by law; and

6. Such other relief as the Court deems just and proper.

On Count III:

1. An Order certifying the case as a class action on behalf of the proposed California Subclasses under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same.

    2.          An order entering judgment in favor of Plaintiff and the California

                Subclasses and against Defendant for damages pursuant to Cal. Civ. Code

                §§ 1785.31(a)(1) and 1785.31(a)(2).

    3.          Entry of an injunction ordering Trans Union to rectify the credit reporting

                errors and to change its procedures for reporting bankruptcy information

                about consumers.

    4.          An order granting costs and reasonable attorneys' fees;

    5.          An award of pre-judgment and post-judgment interest as provided by law;

                and

    6.          Such other relief as the Court deems just and proper.

On Count IV:

    1.          An Order granting judgment in Plaintiff's favor and against Defendant for

                actual, statutory, and punitive damages pursuant to Cal. Civ. Code. §§

                1785.31(a)(1) and 1785.31(a)(2).

    2.          An award for reasonable attorneys fees and costs pursuant to Cal. Civ.

                Code § 1785.31.

    3.          An award of pre-judgment and post-judgment interest as provided by law,

                and

    4.          Such other relief as the Court deems just and proper.

### **TRIAL BY JURY**

    Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE:  February 21, 2022        By:    **FRANCIS MAILMAN SOUMILAS, P.C.**

*/s/ James A. Francis*
JAMES A. FRANCIS
LAUREN KW BRENNAN
1600 Market Street, Suite 2510
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

TAMMY HUSSIN*
**HUSSIN LAW FIRM**
1596 N. Coast Hwy 101
Encinitas, CA 92024
Tel. 877.677.5397
Fax 877.667.1547
Tammy@HussinLaw.com


*Attorneys for Plaintiff*


*\*Pro Hac Vice Application filed*