**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM NORMAN BROOKS, III, | |
| *Plaintiff,* | |
| v. | Civil Matter No. 2:22-cv-00048-GEKP |
| TRANS UNION, LLC, | |
| *Defendant.* | |

**DEFENDANT TRANS UNION LLC'S BRIEF IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Michael O'Neil *(pro hac vice)*
Albert E. Hartmann *(pro hac vice)*
Kristen A. DeGrande *(pro hac vice)*
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: 312-207-1000
E: michael.oneil@reedsmith.com
E: ahartmann@reedsmith.com
E: kdegrande@reedsmith.com

Joshua M. Peles
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: 215-851-8100
E: jpeles@reedsmith.com

*Attorneys for Defendant Trans Union LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    Plaintiff's Claim ................................................................................... 2

    B.    Plaintiff's Abandonment of Seven Class Claims and Revision of
           Definition of Class Whose Certification Plaintiff Seeks ..................... 5

    C.    Plaintiff's Various Evolving Theories of How to Identify a Class of
           Consumers Whom Trans Union Inaccurately Reported as Filing for
           Bankruptcy. ........................................................................................... 6

          1.    Plaintiff's failed efforts to devise a method for identifying possible
               class members. ........................................................................... 6

               a.    The parties cooperative, albeit unsuccessful, efforts to
                    identify class members. ................................................... 6

               b.    Plaintiff's claim that Trans Union can use the "existing
                    functionality" of its systems to identify credit reports of
                    possible class members. ................................................... 9

               c.    Plaintiff's estimates of how long it would take to identify
                    class members. .............................................................. 10

          2.    Trans Union's uncontradicted opinions regarding unreliability of
                the lack of public record in credit report to prove inaccurate
                bankruptcy remark ................................................................... 11

           3.    Plaintiff's new proposal to search PACER records for public
                records, and Trans Union's testing of it ................................... 15

III.  ARGUMENT ..................................................................................................... 17

    A.    Governing Rule 23 Standards and Burdens of Proof ........................... 17

    B.    Plaintiff's Cursory Commonality Argument Fails. .............................. 19

    C.    Individualized Issues Predominate Over Common Questions. ............ 20

          1.    The predominance inquiry must start with the elements of the
                claim. ........................................................................................ 20

          2.    Plaintiff's predominance argument fails ................................... 22

          3.    The need for individualized proof that each class member's
                inaccurate credit report was inaccurate defeats a finding of
                predominance. .......................................................................... 23

          4.    Plaintiff does not intend to introduce trial evidence of class-
                member inaccuracy .................................................................. 25

D.    Lack of Common Evidence of Inaccuracy Precludes the Necessary Determination of Superiority....................................................................27

E.    Ascertaining Class Membership is Not Administratively Feasible. ....................28

1.    The Third Circuit's 'heightened ascertainability" test. ...........................28

2.    Plaintiff cannot demonstrate that ascertaining class membership is administratively feasible. .........................................................................31

IV.    CONCLUSION ..............................................................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Ollie's Bargain Outlet, Inc.*,
    37 F.4th 890 (3rd Cir. 2022) ...............................................................................19

*Berkery v. Equifax Info. Servs.*,
    429 F. Supp. 3d 24 (E.D. Pa. 2019) (Pratter, J.) .................................................21

*Bibbs v. Trans Union LLC*,
    43 F.4th 331 (3d Cir. 2022) ................................................................................21

*Blain v. SmithKline Beecham Corp.*,
    240 F.R.D. 179 (E.D. Pa. 2007)..........................................................................28

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ............................................................................................30

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ...............................................................................35

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*,
    867 F.3d 434 (3d Cir. 2017) ...............................................................................34

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..............................................................................................20

*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010) ......................................................................2, 3, 21

*Crane v. Trans Union, LLC*,
    282 F. Supp. 2d 311 (3d Cir. 2003).....................................................................21

*Danvers Motor Co. v. Ford Motor Co.*,
    543 F.3d 141 (3d Cir. 2008) ...............................................................................27

*Davis v. Screening*,
    No. 22-2468, 2024 U.S. Dist. LEXIS 15735 (E.D. Pa. Jan. 30, 2024) .................21

*Dean v. CVS Pharm., Inc.*,
    No. CV 14-2136, 2018 U.S. Dist LEXIS 138633 (E.D. Pa. Aug. 16, 2018) ........18

*In re Domestic Drywall Antitrust Litig.*,
    No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758 (E.D. Pa. Aug. 24, 2017) ......29

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ............................................................................................20

*Farmer v. Phillips Agency, Inc.*,
  285 F.R.D. 688 (N.D. Ga. 2012) ......................................................................25

*Ferreras v. Am. Airlines, Inc.*,
  946 F.3d 178 (3d Cir. 2019) ..................................................................... 23, 24

*Garcia v. Equifax Info. Servs., LLC*,
  No. 2:17-cv-03123-JAD-VCF, 2020 U.S. Dist. LEXIS 252995 (D. Nev.
  March 23, 2020) ...............................................................................................25

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .........................................................................................18

*Gomez v. Kroll Factual Data, Inc.*,
  No. 13-cv-0445-WJM-KMT, 2014 U.S. Dist. LEXIS 51303 (D. Colo. Apr.
  14, 2014) ..........................................................................................................25

*Gonzalez v. Owens Corning*,
  885 F.3d 186 (3d Cir. 2018) .............................................................................18

*Hargrove v. Sleepy's LL*,
  974 F.3d 467 (3d Cir. 2020) ....................................................................... 28, 30

*Harnish v. Widener Univ. Sch. of Law*,
  833 F. 3d 298 (3d Cir. 2016) ................................................................ 18, 22, 29

*Harper v. Trans Union, LLC*,
  No. 04-3510, 2006 U.S. Dist. LEXIS 91813 (E.D. Pa. Dec. 20, 2006) ......... 24, 28

*Hayes v. Wal-Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013) ....................................................................... 20, 29

*Henderson v. Corelogic Nat'l Background Data, LLC*,
  No. 12-0097, 2016 U.S. Dist. LEXIS 119442 (E.D. Va. Sept. 2, 2016) ...............25

*Huber v. Simon's Agency, Inc.*,
  84 F.4th 132 (3d Cir. 2023) ..............................................................................23

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) .......................................................... 17, 18, 19, 20

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ....................................................................... 18, 27

*Jones v. RealPage, Inc.*,
  No. 19-2087, 2020 U.S. Dist. LEXIS 251189 (N.D. Tex. Jan. 27, 2020) .............25

*Kelly re RealPage, Inc.*,
    47 F. 4th 202 (3rd Cir. 2022) ............................................................... 30

*Klotz v. Trans Union, LLC*,
    246 F.R.D. 208 (E.D. Pa. 2007) ........................................................... 24

*Krajewski v. Am. Honda Fin. Corp.*,
    557 F. Supp. 2d 596 (E.D. Pa. 2008) .................................................... 21

*In re Lamictal Direct Purchaser Antitrust Litig.*,
    957 F.3d 184 (3d Cir. 2020) .............................................. 18, 20, 21, 22

*In re LifeUSA Holding*,
    242 F.3d 136 (3d Cir. 2001) ................................................................. 27

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ................................................... 20, 29, 30

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*,
    259 F.3d 154 (3d Cir 2001) ............................................... 18, 20, 27

*In re Niaspan Antitrust Litig.*,
    67 F. 4th 118 (3rd. Cir. 2023) ....................................................*passim*

*Owner-Operator Indep. Drivers Ass'n, Inc v. USIS Com. Servs., Inc.*,
    537 F.3d 1184 (10th Cir. 2008) ........................................................... 24

*Philbin v. Trans Union Corp.*,
    101 F.3d 957 (3d Cir. 1996) ............................................................ 3, 21

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ........................................................... 20, 28

*In re The Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283 (3d Cir. 1998) ................................................................. 20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................. 24

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ........................................................... 27

*Wachtel v. Guardian Life Ins. Co. of Am.*,
    453 F.3d 179 (3rd Cir. 2006) ............................................................... 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................ 19, 23, 26

*Wilson v. First Advantage Background Servs. Corp.*,
No. 21-cv-06071-SRB, 2023 U.S. Dist. LEXIS 157930 (W.D. Mo. July 28, 2023)..........................................................................................................................24

**Statutes**

15 U.S.C. § 1681e(b)..........................................................................................................2

15 U.S.C. § 1681s-2(a)(1)(A)..............................................................................................3

**Rules**

Fed.R.Civ.P. 23(b)(3)...............................................................................................20, 27

Fed.R.Civ.P. 23(c)(1)(A)...........................................................................................26, 28

**Regulations**

12 C.F.R. § 1022.42(a)........................................................................................................3

Defendant Trans Union LLC ("Trans Union"), by and through its undersigned counsel, hereby submits its brief in opposition to Plaintiff's Motion for Class Certification (ECF 43) ("Motion").

## I.     INTRODUCTION

Two years after first filing this lawsuit, which contends that Trans Union LLC inaccurately reports that a consumer's credit account is in bankruptcy when that credit report does not also contain a public record bankruptcy. Plaintiff has moved pursuant to Rule 23 for class certification. That motion abandons seven (7) of the eight (8) classes alleged in his Amended Complaint and seeks only certification of a modified class.

As reflected in several stipulated orders, the parties jointly sought several extensions of time for Plaintiff to file his Rule 23 motion, from September 2022 to February 2, 2024. Those joint stipulations explained that Trans Union had never attempted to undertake the massive review of archived raw data reflecting approximately 2.9 billion credit reports issued over three (3) years, to find those that Plaintiff contends can be used to identify putative class members. Those extensions also extended the deadline for Plaintiff's "data scientist" opinion witness to develop and test methods for such data extractions.  However, ultimately, he failed to do so.

Equally problematic for Plaintiff is his 11th-hour realization that his long-held theory for why the bankruptcy remarks on accounts were inaccurate on a class-wide basis failed. Trans Union disclosed the opinions of its 20-year employee responsible for the computer algorithms used by Trans Union to match credit account and public records from third parties to existing credit files. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

Therefore, by his Motion, Plaintiff pivots to a new method for proving what bankruptcy remarks of the originally-defined class were inaccurate. However, aside from creating the need for thousands and thousands of individualized fact determinations that defeat class certification, that newly-proposed method has been proven erroneous and unreliable on these facts.

As detailed herein, Trans Union argues that Plaintiff's Motion should be denied for any one of four reasons, i.e., Plaintiff's failure to prove four essential elements of Rule 23(a) and Rule 23(b)(3), i.e., commonality, predominance, superiority, and ascertainability.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Claim.

By his First Amended Class Action Complaint (ECF 13) (the "Amended Complaint"), Plaintiff asserts claims against Trans Union for multiple alleged FCRA and related California statutory violations. (Am. Cmplt., *passim*.) However, by his Rule 23 motion, Plaintiff only seeks to certify a single, albeit modified, class for Trans Union's alleged violation of Section 1681e(b) of the FCRA. (Mem. of Law in Supp. of Pl.'s Mot. for Class Certification (ECF 43-1) ("Mem.") at 10 & n.3.)[1]

Under Section 1681e(b), when preparing "consumer reports," e.g., credit reports, "consumer reporting agencies," or "CRAs," (like Trans Union) must use "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To prevail on a Section 1681e(b) claim, the plaintiff must prove that the CRA reported inaccurate information to a third party. *See Cortez v. Trans*

---

[1] All pin-citations to the Memorandum of Law in Support of Plaintiff's Motion for Class Certification herein are to the corresponding ECF document number.

*Union, LLC*, 617 F.3d 688, 708 (3d Cir. 2010) (citing *Philbin v. Trans Union Corp.*, 101 F.3d
957, 963 (3d Cir. 1996).) However, even if it reports such inaccurate information, a CRA is not
strictly liable. Instead, a CRA can avoid liability for reporting inaccurate information if it
employed the FCRA-required "reasonable procedures." *See Cortez*, 617 F.3d at 708.[2]

 Plaintiff—citing to his sworn declaration—explains that he has never filed for
bankruptcy. (Mem. at 14 (citing Pl. Ex. 10 (Declaration of William Norman Brooks, III in
Support of His Motion for Class Certification) (ECF 43-12) ("Brooks Decl.") at ¶ 5).)[3] A
different William Brooks—whose Social Security Number ("SSN") ends in the same last four
digits as Plaintiff's—filed for bankruptcy in Alabama on January 3, 2020. (Mem. at 14.)

---

[2] The FCRA also imposes accuracy-related duties on entities that provide credit information to CRAs, known as "furnishers." For example, a furnisher is prohibited from providing information to CRAs if it "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A); *see also* 12 C.F.R. § 1022.42(a) (regulations requiring furnishers to "establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information" furnished to CRAs).

[3] Trans Union will cite to the exhibits filed in support of Plaintiff's Motion as "Pl. Ex. __." Trans Union will cite to the exhibits attached to the contemporaneously filed Declaration of Michael O'Neil (ECF 49) as "Ex. __."

[4] Plaintiff separately sued LCI for misattributing the bankruptcy filing to Plaintiff in its reporting to Bank of America, and sued Bank of America for closing his accounts and misreporting to Trans Union that Plaintiff's accounts were included in a bankruptcy. Both were filed as class actions, but Plaintiff settled his claim against Bank of America on an individual basis.



On or about March 11, 2020, Trans Union prepared a credit report about Plaintiff in connection with his attempt to refinance his mortgage through a broker, Benchmark Funding. (Brooks Decl. at ¶ 12.) Plaintiff suggests that this report included bankruptcy remarks for more than one Bank of America account. (Mem. at 16.) ███████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████

████████ (*See supra* at 3-4.)

Plaintiff claims that his refinance "application was denied." (Brooks Decl. at ¶ 12.) However, Plaintiff's Motion fails to acknowledge that, after that "denial," he was approved for the loan he sought days later. (Pl. 1st Supp. Resp. to Def.'s 1st Set of Interrogs. at 9 (attached as Ex. A).) Further, while Plaintiff claims the denial was the result of Trans Union's report, (*see* Brooks Decl. at ¶ 12), the notice of the denial specifically states that the reason for the denial was bankruptcy information reported by a different CRA, Equifax. (BROOKS0184-185 (copy attached as Ex. B).)

**B.    Plaintiff's Abandonment of Seven Class Claims and Revision of Definition of Class Whose Certification Plaintiff Seeks.**

Plaintiff's Amended Complaint identified eight (8) classes and subclasses that Plaintiff sought to certify and represent. (Am. Cmplt. at 8-9, ¶ 49.) However, Plaintiff now advises that, "[b]ased upon developments in discovery," Plaintiff is abandoning seven (7) class claims brought under the FCRA and California statutes. (Mem. at 10 n.3.) Plaintiff now purports to seek certification of "a refined version of the 'Tradeline-Only Bankruptcy Class.'" (*Id.*) In reality, the new class definition offered by Plaintiff's Motion represents not only a wholesale revision of that class definition, but an important concession that Plaintiff's long-held theory for proving the inaccuracy of the bankruptcy remark of absent class members has been completely disproven.

The core of Plaintiff's class claim for violation of Section 1681e(b) is that Trans Union's reporting of bankruptcy remarks for credit accounts where the credit report did not include a bankruptcy public record was inaccurate. (Am. Cmplt. at 4-5, ¶ 21 ("Thus, if there is no bankruptcy filing set forth in the Public Records section of a credit report, it is presumptive information that the consumer did not filed (sic) for bankruptcy.").) Plaintiff previously described the corresponding class as the "Tradeline-Only Bankruptcy Class." (*Id.* at 8, ¶ 49.) Notably, Plaintiff's sole opinion witness, a purported, "data scientist" charged with identifying members of that class, endeavored to only identify members of that now-abandoned class. (*See, e.g.*, Mem. at 18.)

However, Trans Union demonstrated that Plaintiff's theory of inaccuracy was fundamentally flawed, because the mere proof that a credit report did not contain a bankruptcy public record is not a reliable proof the consumer did not file for bankruptcy. (*See infra* at. 11-15.) Therefore, the efforts of Plaintiff's "data scientist," premised solely upon use of data

reported by Trans Union, did not identify credit reports which inaccurately reported the consumer had filed for bankruptcy.

### C. Plaintiff's Various Evolving Theories of How to Identify a Class of Consumers Whom Trans Union Inaccurately Reported as Filing for Bankruptcy.

Ultimately, given the failure to demonstrate how to prove the key element of the inaccuracy of each report of each putative class member, Plaintiff's Motion does not address it. Instead, Plaintiff contends that Trans Union agrees a relevant and applicable record should "go together."

        1.    Plaintiff's failed efforts to devise a method for identifying possible class members.

Plaintiff offers the opinions of Jonathan Mr. Jaffe to supposedly show that the class is "currently and readily ascertainable." (Mem. at 23.) To be clear, Mr. Jaffe has not identified members of the modified class that Plaintiff seeks to certify. Instead, he has offered opinions that class members can be identified. However, a review of the uncontradicted record of the parties' cooperative efforts to identify class members demonstrates Mr. Jaffe's conclusory opinions are unsupported.

        a.    The parties cooperative, albeit unsuccessful, efforts to identify class members.

Plaintiff began the process of trying to identify class members by serving Trans Union with an interrogatory asking Trans Union to identify the number of consumers in the original class definition, i.e., the subject of credit reports containing bankruptcy remarks but not public record bankruptcies. (Pl. Ex. 23 (Defendant Trans Union LLC's Fourth Supplemental Responses and Objections to Plaintiff's Interrogatory No. 7) (ECF 43-25) ("Pl. Ex. 23") at 1.) Trans Union had not previously attempted to perform the type of automated analysis of three (3) years' worth of raw credit-report data that would allow it to identify all such consumers. Accordingly, Trans

Union explained why it could not answer this interrogatory. (Pl. Ex. 23 at 2-3.) In response, as Plaintiff acknowledges (Mem. at 17-19), Plaintiff and Trans Union began a cooperative, iterative process to determine whether Trans Union could identify and extract to Plaintiff the data he believed could identify putative class members.

It should be noted that Plaintiff has never asked Trans Union to produce all credit reports furnished during the three-year class period, so that his data scientist could search for relevant data. Instead, Plaintiff has sought only raw data contained within three months of credit reports meeting only certain criteria, i.e., reports containing an account with a bankruptcy remark but not including a bankruptcy public record. ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
██████████ (*See infra* at 13.) Accordingly, identifying and extracting only the reports Plaintiff seeks would require scanning raw data reflecting almost three (3) billion credit reports (which are stored as raw data). Trans Union has demonstrated it has never undertaken such efforts and that its attempts to do so here on only a few months of data have proven unfeasible.
██████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████

As they engaged in this lengthy (and, ultimately, unsuccessful) effort to devise a multi-step process to identify possible class members, the parties jointly requested that this Court extend the time for the parties to complete such discovery and for Plaintiff to move to certify a class. As part of these joint requests, the parties explained that "as the Parties have discussed and advised the Court, Defendant has never undertaken the multi-step, automated process under discussion by the Parties, and therefore the Parties are discussing and investigating how to identify class members." (ECF 34 at 1; *see also* ECF 38 at 1 (same); Aug. 22, 2022, Stip. ("Trans Union has never undertaken the multi-step, automated process under discussion by the parties, and therefore the parties are discussing that design and testing of custom queries and other searches").) This ongoing process involved depositions of multiple Trans Union witnesses, and Plaintiff retaining Mr. Jaffe to devise a method for identifying class members. (*See* ECF 39 at 1-2 (discussing steps undertaken by parties to attempt to identify class members).) Again, at every step, Trans Union agreed to attempt to provide Plaintiff with the data he had requested, and also agreed to extend the litigation schedule to allow time for Mr. Jaffe to determine a method for ascertaining class members.

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ (*see infra* at 9-11).

      b.     Plaintiff's claim that Trans Union can use the "existing functionality" of its systems to identify credit reports of possible class members.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████ (*See supra* at 8-9.) ████████████████

██████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

(*See supra* at 8-9.) ██████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

Thus, by his Rule 23 Motion, Plaintiff offers no factual support for his supposition that Trans Union can easily use the "existing functionality" of its multiple systems to query its data to locate raw credit-report data about possible class members.

c.    Plaintiff's estimates of how long it would take to identify class members.

Second, because Mr. Jaffe has never attempted to ascertain membership in the three-year class, Plaintiff's Motion offers an estimate for the time it would take to do so. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████ Consistent with the glaring omission in Mr. Jaffe's reports and testimony discussed above, Plaintiff does not identify the "'this-way' method" that would be employed to extract the data. In any event, Plaintiff fundamentally misconstrues the relevance of the time estimate offered by Mr. Jaffe. ███████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████  Therefore, this statement is irrelevant to

whether, and how long it would take for, Trans Union to devise, test, and implement some

unknown method for "extracting" the data from separate systems before it can be reviewed.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████  Accordingly, Mr. Jaffe has not offered an opinion on the time it

would take to extract and review data to identify the proposed class.

>   2.   Trans Union's uncontradicted opinions regarding unreliability of the lack
>        of public record in credit report to prove inaccurate bankruptcy remark.

As explained below (*see infra* at 21-22), Plaintiff's claim is that Trans Union should not

have included the bankruptcy remarks Bank of America furnished to Trans Union because his

credit file at the time included no corresponding bankruptcy public record.  Therefore, according

to Plaintiff, Trans Union should have known the remark was inaccurate. Based on that

unsupported belief,[5] Plaintiff has contended the absence of a public record on the credit report

containing the bankruptcy remark can prove the inaccuracy of all absent class members. (*See,

e.g.,* Am. Cmplt. at ¶ 21.)

In response, Trans Union offered the expert opinions of its longtime employee Corinne

Wodzinski, who had responsibility for more than twenty years for developing, analyzing, and

updating the algorithms it uses to match credit account information received from creditors and

public records (e.g., bankruptcy filings) to credit files maintained by Trans Union. (Rule

26(a)(2)(B) Report of Corinne Wodzinski ("CW Rep.") at ¶¶ 1, 7-9 (copy attached as Ex. D).)[6]

---

[5] This core contention of Plaintiff's § 1681e(b) class claim is unsupported by opinion (or fact) testimony.
[6] Although Plaintiff acknowledges Ms. Wodzinski's opinions (Mem. at 11 n.5), he fails to address them.

Ms. Wodzinski identified in her expert disclosure report a number of reasons why a public record may not be added to the correct file and that the absence of a public record was not a reliable indicator the consumer did not file for bankruptcy.









To further support that opinion, counsel for Trans Union requested a search of public bankruptcy records by a paralegal. (*See* Declaration of Albert Hartmann ("Hartmann Decl.) at ¶¶ 3-7 (copy attached as Ex. E).)

3.    Plaintiff's new proposal to search PACER records for public records, and Trans Union's testing of it.

Plaintiff originally defined the class including proof of inaccuracy based on the absence of a bankruptcy public record in a credit report including an account with a bankruptcy remark. (Am. Cmplt. at ¶ 49(a).) However, by his Rule 23 Motion—filed after Ms. Wodzinski's report and deposition—Plaintiff modified that class definition to include the additional requirement that "there is no government-held public record of a bankruptcy filings within ten (10) years prior to the date of the report." (Mem. at 10.)



This does nothing to support the reliability of Plaintiff's proposed search for public records.



## III.    ARGUMENT

### A.    Governing Rule 23 Standards and Burdens of Proof.

Class actions are "an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d

305, 309 n.6 (3d Cir. 2008) (hereinafter "*Hydrogen Peroxide*") (citation omitted).  To obtain

certification of the class, Plaintiff must prove the four requirements of Rule 23(a): numerosity,

commonality, typicality, and adequacy. *Gonzalez v. Owens Corning*, 885 F.3d 186, 192 (3d Cir. 2018) (citation omitted). Plaintiff also must prove the predominance requirement of Rule 23(b)(3), because he seeks to recover damages on behalf of the putative class. *Dean v. CVS Pharm., Inc.,* No. CV 14-2136, 2018 U.S. Dist LEXIS 138633, at *1 (E.D. Pa. Aug. 16, 2018) (citing *Johnston v. HBO Film Mgmt., Inc.,* 265 F.3d 178, 183 (3d Cir. 2001)). Plaintiff continues to bear the burden of proving each of these requirements by a preponderance of the evidence. *Harnish v. Widener Univ. Sch. of Law*, 833 F. 3d 298, 304 (3d Cir. 2016); *see also In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 191 (3d Cir. 2020) (hereinafter "*Lamictal*") (same).[9] "If a district court harbors uncertainty about whether the Plaintiff has satisfied the requirements of Rule 23, class certification should be denied." *In re Niaspan Antitrust Litig.*, 67 F. 4th 118, 130 (3rd. Cir. 2023) (hereinafter "*Niaspan*").

A district court abuses its discretion if its decision granting or denying class certification "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Hydrogen Peroxide,* 552 F.3d at 312 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*, 259 F.3d 154, 165 (3d Cir 2001)).

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *Hydrogen Peroxide*, 552 F.3d at 309 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161 (1982)). A trial court must conduct this rigorous analysis "even if it involves judging credibility, weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims." *Harnish*, 833 F.3d at 304 (citing *Hydrogen Peroxide*, 552 F.3d at 316-25).

---

[9] Plaintiff's contention that he need only make "a preliminary legal showing" of the Rule 23 requirement and then the burden of proof shifts to Trans Union, supported not by caselaw but only by reference to a 24-years old treatise (Mem. at 21) is simply wrong.

Furthermore, as the Third Circuit has instructed:

[B]ecause the decision whether to certify a class requires a thorough examination of the factual and legal allegations, the court's rigorous analysis may include a preliminary inquiry into the merits and the court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.

*Hydrogen Peroxide*, 552 F.3d at 317 (citations omitted). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (noting that "Frequently" the district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.").

### B.    Plaintiff's Cursory Commonality Argument Fails.

To satisfy the commonality requirement of Rule 23(a)(2), this Court must find there are "questions of law or fact common to the class." As Plaintiff concedes (Mem. at 24), the Supreme Court in *Wal-Mart*, held that it is not common questions but common answers to those questions that establish commonality. 564 U.S. at 374-75 (reversing Rule 23(b)(3) class certification due to lack of Rule 23(a)(2) commonality). Here, Plaintiff only identifies two "common questions," i.e., the reasonableness of Trans Union's procedures and the related question of whether those procedures are so unreasonable to be willful (Mem. at 24). However, Plaintiff does not offer answers to those general questions, nor does Plaintiff identify any common evidence he might rely on to prove these arguments. "Posing a hypothetical common question is not enough to satisfy Plaintiff's burden of proof. There must be evidence the class proceeding will likely 'produce a common answer.'" *Allen v. Ollie's Bargain Outlet, Inc.,* 37 F.4th 890, 901 (3rd Cir. 2022) (reversing class certification, finding that district court abused its discretion in finding Rule 23(a)(2) commonality). Therefore, Plaintiff has failed to establish the requisite commonality.

### C.    Individualized Issues Predominate Over Common Questions.

Class certification is not appropriate here unless this Court determines that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.Pro. 23(b)(3). The essential requirement of Rule 23(b)(3) predominance is "more rigorous" than the commonality requirement of Rule 23(a)(2); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). "Predominance measures whether the class is sufficiently cohesive to warrant certification." *Newton*, 259 F.3d at 187. "Issues common to the class must predominate over individual issues…" *Hydrogen Peroxide*,  552 F.3d at 311 (quoting *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998)).

### 1.    The predominance inquiry must start with the elements of the claim.

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The Third Circuit has reaffirmed this fundamental principle of Rule 23 and has held that predominance "focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Hayes*, 725 F.3d at 359. In assessing predominance, "a court at the certification stage must examine each element of a legal claim through the prism of Rule 23(b)(3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012). If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Lamictal*, 957 F.3d at 190 (quoting *Hydrogen Peroxide*, 552 F.3d at 311). The predominance requirement therefore demands that the essential elements of the class claims be "capable of proof at trial through evidence that [is] common to the class."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013) (citation omitted). In meeting the predominance requirement, Plaintiff "must demonstrate that

the element of the legal claim is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Lamictal*, 957 F.3d at 190 (citations omitted). Plaintiff acknowledges this rule of law (Mem. at 28), but then ignores it.

Plaintiff, neither as part of his cursory predominance analysis (Mem. at 28-30), nor elsewhere in his Motion, identifies for this Court the elements of his Section 1681e(b) claim. Most notably, Plaintiff does not acknowledge that proof of the inaccuracy of the information reported by Trans Union is a core element of that claim. In order to prevail on a Section 1681e(b) claim, a Plaintiff must prove: "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Cortez*, 617 F.3d at 708 (quoting *Philbin,* 101 F.3d at 963); *see also Crane v. Trans Union, LLC*, 282 F. Supp. 311, 319 (3d Cir. 2003) (In order to recover under a Section 1681e(b) claim, the plaintiff must establish both "that the CRA included inaccurate information in his credit report, but also that (1) the inaccuracy was due to the CRA's failure to follow reasonable procedures to assure maximum possible accuracy; (2) the consumer suffered injury; and (3) the consumer's injury was caused by the inclusion of the inaccurate entry.") and *Berkery v. Equifax Info. Servs.*, 429 F. Supp. 3d 24, 31-32 (E.D. Pa. 2019) (Pratter, J.) (listing same elements). That a consumer's credit report contains inaccurate information is the keystone of a Section 1681e(b) claim. *See Bibbs v. Trans Union LLC*, 43 F.4th 331, 342 (3d Cir. 2022) ("An inaccuracy is the threshold requirement for a § 1681e(b) claim."); *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 614 (E.D. Pa. 2008) ("A plaintiff cannot sustain a claim to enforce § 1681e(b) without showing an inaccuracy in her credit report."); and *Davis v. Screening*, No. 22-2468, 2024 U.S. Dist. LEXIS 15735, at

*11-12 (E.D. Pa. Jan. 30, 2024) (granting summary judgment on Section 1681e(b) claim because plaintiff could not establish that the consumer report was inaccurate or misleading).

Plaintiff acknowledges that it must employ individualized, manual searches of public bankruptcy records to remove from the putative class those consumers who did file for bankruptcy, but does not address how these necessary mini-trials defeat proof of predominance.

### 2. Plaintiff's predominance argument fails

"'Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Lamictal*, 957 F.3d at 190 (citations omitted). Predominance also "necessarily entails some analysis of whether the proposed class-wide evidence"—if there is any—"will actually be sufficient for the class to prevail on the predominant issues in the case." *Harnish*, 833 F.3d at 304-305. "If class-wide evidence is lacking, the court cannot be adequately assured that individualized evidence will not later overwhelm the case and render it unsuitable for class-wide adjudication." *Id.* And if "proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.'" *Lamictal*, 957 F.3d at 190 (citation omitted).

Rather than addressing the elements of the claim here and arguing why common questions predominate over individualized issues, Plaintiff's cursory predominance argument is that "courts have regularly found that common issues are more likely to predominate in an FCRA class action seeking only statutory damages." (Mem. at 29.) Here, however, unlike in those decisions, Trans Union does not contend that the damages awardable to class members is an individualized issue that that defeats predominance. Instead, although not addressed by Plaintiff, Trans Union points to the proverbial "elephant in the room," i.e., the need to

individually review the three years' of credit-report data, and then use that data to individually

and manually, search through, identify, and extract public bankruptcy records to prove the

inaccuracy of each report. Such necessary individualized "mini-trials" were necessary in the

decisions cited by Plaintiff.

Plaintiff purports to identify trial issues which can be proven by common issues (Mem. at

29-30), but does not engage in the necessary weighing of individual and common issues that is

necessary under Rule 23(b)(3). Plaintiff suggests that alleged common evidence supporting a

classwide request for statutory damages suffices to establish that common issues predominate

over individualized issues. (Mem. at 29.) However, aside from not addressing the individualized

issue of inaccuracy, this approach is inconsistent with the more nuanced analysis of the

predominance requirements. The Third Circuit has made clear that the "predominance inquiry

'asks whether the common, aggregation-enabling, issues in the case are more prevalent or

important than the non-common, aggregation-defeating individual issues.'" *See Huber v.

Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023) (quoting *Ferreras v. Am. Airlines, Inc.*,

946 F.3d 178, 185 (3d Cir. 2019)).

3.    The need for individualized proof that each class member's inaccurate
credit report was inaccurate defeats a finding of predominance.

The whole purpose behind a class action is to allow for a classwide resolution, "which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. To this end, the Rule

23(b)(3) predominance analysis requires courts to "'give careful scrutiny to the relation between

common and individual questions in a case. An individual question is one where members of a

proposed class will need to present evidence that varies from member to member, while a

common question is one where the same evidence will suffice for each member[.]'" *Ferreras*, 946 F.3d at 185 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Plaintiff does not and cannot point to any common evidence that would prove inaccuracy for each of the absent class members, as required to show that inaccuracy is a common—as opposed to individualized—issue in this case. *See Tyson Foods,* 577 U.S at 453 (explaining that a question is individualized if the plaintiffs "will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof") (citation omitted).

Indeed, the individualized inquiries ordinarily necessitated to resolve the inaccuracy element of claims brought under Section 1681e(b), or under Section 1681i, are why courts routinely reject, on predominance grounds, certification of class actions asserting FCRA claims that require proof of inaccuracy. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc v. USIS Com. Servs., Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008) (affirming denial of class certification where determining the accuracy of class members' employment history records presented a predominating individualized inquiry); *Klotz v. Trans Union, LLC,* 246 F.R.D. 208, 216 (E.D. Pa. 2007) (denying class certification because individualized issues, including threshold issue of "whether the disputed information was inaccurate," would predominate); *Harper v. Trans Union, LLC*, No. 04-3510, 2006 U.S. Dist. LEXIS 91813, at *7, *23-26 (E.D. Pa. Dec. 20, 2006) (rejecting certification and finding that accuracy, among other issues, was individualized and defeated class certification where the credit reports of putative class members purportedly "incorrectly noted that" they "had filed for bankruptcy protection"); *Wilson v. First Advantage Background Servs. Corp.*, No. 21-cv-06071-SRB, 2023 U.S. Dist. LEXIS 157930 at *8-9 (W.D.

Mo. July 28, 2023) (denying class certification of § 1681e(b) claim for lack of predominance due, in part, to need to prove each class member's report was inaccurate); *Jones v. RealPage, Inc.*, Civ. No. 19-2087, 2020 U.S. Dist. LEXIS 251189, at *19-23 (N.D. Tex. Jan. 27, 2020) (holding "that individualized issues will predominate with respect to determining whether each putative class member's consumer report was inaccurate" where there were "likely members of the class whose reports are indeed accurate" and would need to be identified); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 12-0097, 2016 U.S. Dist. LEXIS 119442, at *38 (E.D. Va. Sept. 2, 2016) (finding that the individual issue of completeness under 15 U.S.C. § 1681k predominated where plaintiffs challenged reporting of criminal background data, which would require an individualized review of each record to determine whether and how it was incomplete).[10]

### 4. Plaintiff does not intend to introduce trial evidence of class-member inaccuracy.

Plaintiff not only fails to explain how he will prove the inaccuracy of class members' credit reports, he also makes clear he will not offer such proof. After realizing, in light of Ms. Wodzinski's uncontradicted opinions and supporting analysis, that credit reports with bankruptcy remarks but no corresponding public record will not prove inaccuracy, Plaintiff pivoted at the 11th hour to a new theory and method of proving that essential element of the claim. ███

██████████████████████████████████████████████

---

[10] *See also Garcia v. Equifax Info. Servs., LLC*, No. 2:17-cv-03123-JAD-VCF, 2020 U.S. Dist. LEXIS 252995, at *17-18 (D. Nev. March 23, 2020) (striking class allegations where there were individual questions on inaccuracy and plaintiff failed to show that two common questions were more "numerous or important than "questions about inaccuracy"); *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445-WJM-KMT, 2014 U.S. Dist. LEXIS 51303, at *9 (D. Colo. Apr. 14, 2014) (denying class certification in § 1681e(b) case where issue whether each class member's "credit report was inaccurate" would require individualized treatment); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 703 (N.D. Ga. 2012) (despite presence of some common issues, denying certification in § 1681k "completeness" case where "the court will need to conduct individual inquiries for each consumer with respect to" whether information in their reports was accurate and complete).

████████████████████████████████████████

████████████████████████████████████████

██ However, that work will not be presented at trial to the jury (*see* Mem. at 30-31 (Plaintiff's trial plan)), but instead will be decided by these paralegals, presumably in preparing a class list for notice purposes.

More broadly, Plaintiff does not contemplate any trial of, or jury decision on, any claims related to the class, as his trial plan contemplates only a trial of Plaintiff's individual claims. (*Id.*) This approach to the class trial is inconsistent with the clean mandate of the Third Circuit, which has instructed district courts to include in certification orders a clear and complete statement of "the claims, issue or defenses [will] be treated on a class basis," *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 188 (3rd Cir. 2006).  In order to enable such a finding by the trial court, the Third Circuit instructed a plaintiff seeking class certification "to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof." *Id.* at 186. (quoting Fed.R.Civ.P. 23(c)(1)(A) advisory committee note). Plaintiff has offered a trial plan, however, it does not contemplate <u>any</u> proof of any aspect of the class claims (Mem. at 26-27). Instead, Plaintiff contemplates he "will present his individual case" and "[i]f the jury finds for Plaintiff, the Court can render a judgment <u>for the class</u> based on the jury's findings." (*Id.* (emphasis added.))

Simply put, there is no class-wide evidence that can resolve the requisite inaccuracy element "in one stroke" for all class members, which is what settled precedent demands. *Wal-Mart*, 564 U.S. at 350 ("[A] common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

**D.    Lack of Common Evidence of Inaccuracy Precludes the Necessary Determination of Superiority.**

Rule 23 also requires this Court to determine that "a class action is superior to other methods" for adjudicating the class members' claims. Fed. R. Civ. Pro. 23(b)(3). Because the jury would need to make individual determinations whether each class member's bankruptcy remark was inaccurate, the need to prove such inaccuracy also precludes any finding that class adjudication would be superior to individual lawsuits. "Superiority mandates that the district court determine that the class action is the best method of fairly and efficiently resolving the controversy." *Johnston,*265 F.3d at 185 (citation omitted). The "polestar of Rule 23(b)(3)" is whether and "how a trial of this controversy, if tried as a class action, could be efficiently and fairly managed." *In re LifeUSA Holding*, 242 F.3d 136, 148 (3d Cir. 2001). Courts should therefore "address 'the difficulties likely to be encountered in the management of a class action.'" *Johnston*, 265 F.3d at 194 (citation omitted).

Applying these standards, a class action is unmanageable, and thus not superior, where a "multitude of individualized issues presented in plaintiffs' claims would entail complicated mini-litigations within the class itself." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008); *see also Johnston*, 265 F.3d at 194 (finding class action not superior where a trial "would involve essentially countless mini-trials" to evaluate proof of liability "and the applicability of any defenses[,]" that "would present severe manageability problems for the court"); *Newton*, 259 F.3d at 192 (similar); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278 (11th Cir. 2009) (superiority not met where, given the "central individualized issues[,] … any trial of this case would require the presentation of a substantial amount of evidence specific to each of an unknown number of class members").

The manageability of a proposed class is determined by the manageability of Plaintiff's proposed trial plan. *See Blain v. SmithKline Beechem Corp.*, 240 F.R.D. 179, 192 (E.D. Pa. 2007). However, consistent with the failure of Plaintiff's Motion to address the individualized determination of the inaccuracy of each class members' report, his trial plan contemplates only trying Plaintiff's individual claims with no mention of how to try the class claims. (Mem. at 32-33.) This approach violates the Third Circuit's admonition that Rule 23 movants, and courts certifying classes, must identify "the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof." *Sullivan*, 687 F.3d at 315 (citing Rule 23(c)(1)(A) advisory committee notes).

Just as Plaintiff's proposed trial plan omits any reference to proof of the class claims, his Motion ignores the manageability issues arising from such necessary proof, including most notably proof that each class member's credit reports were inaccurate. Instead, Plaintiff's summarily states: "This class action would be easily manageable." (Mem. at 31.) In fact, in a case also brought by Plaintiff's counsel against Trans Union, which similarly claimed Trans Union inaccurately reported that class members had filed for bankruptcy, the Eastern District of Pennsylvania held that "the individualized proofs required to establish liability under §1681e(b)," including proof of inaccuracy, created manageability issues that precluded a finding that a class action was superior to individual lawsuits. *Harper*, 2008 U.S. Dist. LEXIS 91813 at 27.

### E.    Ascertaining Class Membership is Not Administratively Feasible.

1.    The Third Circuit's 'heightened ascertainability' test.

The Third Circuit has made clear that certification under Rule 23(b)(3) requires that "class [members] . . . be 'currently and readily ascertainable based on objective criteria.'" *Niaspan*, 67 F.4th at 129 (quoting *Hargrove v. Sleepy's LL*, 974 F.3d 467, 477 (3d Cir. 2020).)

The method for ascertaining class membership must also be "reliable" and "economical." *Id.* at 130, 132. The ascertainability requirement has been described "as 'an essential prerequisite' to class certification. *See Hayes*, 725 F.3d at 354, *accord Niaspan*, 67 F.4th at 132 ("Ascertainability is a Key Requirement for Class Actions").

To satisfy that heightened ascertainability requirement,[11] "[p]laintiffs must show that '(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Niaspan* at 130. (citation omitted). Finally,

> [A] plaintiff must propose a classification method with evidentiary support to meet the ascertainability requirement, and "trial courts `must engage in a rigorous analysis and find each of Rule 23[]'s requirements met by a preponderance of the evidence before granting certification. They must do so even if it involves judging credibility, weighing evidence, or deciding issues that overlap with the merits of a plaintiff's claims.

*Id.* (quoting *Harnish,* 833 F.3d at 304 (3d Cir. 2016) (citation omitted) (alteration in original).

The "ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials." *Hayes*, 725 F.3d at 359; *see also Marcus*, 687 F.3d at 593 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."). The ascertainability requirement serves to eliminate "serious administrative burdens that are incongruous with the efficiencies expected in a class action," protect absent class members, and "protect defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable." *Marcus*, 687 F.3d at 593. (citation and quotations omitted). In *Marcus*, the

---

[11] *See In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2017 U.S. Dist. LEXIS 135758, at *24-25 (E.D. Pa. Aug. 24, 2017) (explaining the Third Circuit has reaffirmed and not backed away from its "heightened" ascertainability standard).

Third Circuit noted courts have held the class definition fails where the individuals in the class are not identifiable by the company's databases. *Id.*

The Third Circuit in *Niaspan* further explained the importance of the ascertainability requirement to the class-certification decision:

> "[T]he class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."*Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Yet when members of a Rule 23(b)(3) class cannot be identified in an economical and administratively feasible manner, the very purpose of the rule is thwarted. Ascertainability serves several important objectives in preserving those efficiencies:
>
> > First, the heightened ascertainability requirement established by Third Circuit caselaw eliminates "serious administrative burdens that are incongruous with the efficiencies expected in a class action" by insisting on the easy identification of class members. Second, it protects absent class members by facilitating the "best notice practicable" under Rule 23(c)(2) in a Rule 23(b)(3) action. Third, it protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.

*Niaspan*, 67 F.4th at 132 (internal citations omitted).

Although not acknowledged by Plaintiff, the Third Circuit in *Niaspan* reviewed and summarized Third Circuit decisions examining the "ascertainability requirement." 67 F.4th 118 (3rd Cir. 2023). In so doing, the panel reviewed no less than six of its prior decisions that addressed the "administrative feasibility" requirement that "class [members] . . . be currently and readily ascertainable based on objective criteria." *Id.* at 129-132 (quoting *Hargrove*). Notably, the court in *Niaspan* did not discuss or even reference the decision in *Kelly re RealPage, Inc.*, 47 F. 4th 202 (3rd Cir. 2022), that Plaintiff cryptically describes as "harmonizing Third Circuit case law on ascertainability." (Mem. at 24.)

2.    Plaintiff does not and cannot demonstrate that ascertaining class membership is administratively feasible.

Here, Plaintiff describes a two-step process for identifying class members. However, Plaintiff has failed to demonstrate that either of the two necessary steps are administratively feasible.[12]

Plaintiff first references the initial need to identify and extract on an automated basis, from three years of archived data from almost three (3) billion Trans Union credit reports, those reports purportedly contained bankruptcy remarks without a corresponding public record. (Mem. at 23). Because Trans Union has never performed such a task, and did not have a method to do so, Plaintiff retained Mr. Jaffe to devise methods to do so. As an initial matter, neither Trans Union nor Plaintiff's "data scientist" opinion witness has proposed a method to identify, locate, and retrieve the raw credit-report data from the three separate datasets containing such data, despite the several extensions of time granted by this Court for the parties to do so. (*See supra* at 7-10.) ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ (*See supra* at 8-9.) Although Plaintiff charged him with doing so, Mr. Jaffe has not proposed methods for doing so.

This failure by Plaintiff to devise a "reliable" or "currently and readily ascertainable" method for even the initial step in that process demonstrates that Plaintiff's putative class is not able to be identified.  The similar failure to devise the second step in determining members of the proposed class is equally fatal to Plaintiff's Motion.

---

[12] Plaintiff offers no actual estimate of the time it will take to identify the class. (*See supra* at 10-11.)

A second step in identifying actual class members involves determining which consumers for whom Trans Union reported bankruptcy remarks did not, in fact, file for bankruptcy. Plaintiff concedes the need for this additional step in light of the uncontradicted opinions of Ms. Wodzinski that the more absence of a public record bankruptcy is not a reliable indicator the consumer did not file for bankruptcy. (*See supra* at 11-15.) ███████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████ (*See supra* at 25-26.) ███████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (*See supra* at 16-17.)

As an initial matter, Plaintiff's new class definition, ███████████████████ ███████████, do not involve searching for all bankruptcy filing that might exclude people from the class.  Instead, the new definition only purports to exclude from the class those consumers "for whom there is no government-held public record filing within ten (10) years prior to the date of the report." (Mem. at 10.) ██████████████████████████ ████████████████████████████████████████ ██████████████████████ However, Plaintiff does not explain why only bankruptcy filings within a decade of the credit report are relevant to proving the accuracy of the remark.

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████ (*See supra* at 12-15.) ████████████████████████████

███████████████████████████████████████████

███ *Id.* ████████████████████████████████████

███████████████████████████████████████████

████████████████ (*See supra* at 16-18.)

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

Even a cursory examination of Plaintiff's proposed list of class members (i.e., consumers for whom bankruptcy filing supposedly could not be found) demonstrates the flaws in his proposed process. As explained above, (*see supra* at 13-15), ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████



(*See supra* at 12-13.)

The failure of Plaintiff's proposed method to find all class-member bankruptcy filings

ensures that people not satisfying the class definition will nonetheless be included in the class.

Such a result is a "critical consideration" because "a high degree of over-inclusiveness could

prevent certification." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434,

442 n.4 (3d Cir. 2017). As an initial matter, because Plaintiff's inexplicable proposal that

will only identify bankruptcies filed "within ten (10) years prior to the date of the

report," the proposed class is significantly over-inclusive. (Mem. at 10 (revised class definition).)

It is also over-inclusive because it includes people who <u>did</u> file for bankruptcy.

Plaintiff cannot simply "fix" its flawed search methods by adopting the broader, more

complete search techniques that Trans Union has used. ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ (*See supra* at 5-7.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████

"A plaintiff may not merely propose a method of ascertaining a class without any

evidentiary support that the method will be successful." *Carrera v. Bayer Corp.*, 727 F.3d 300,

---

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

306 (3d Cir. 2013). Therefore, Plaintiff's proposed method for ascertaining class members is neither "reliable" nor "currently and readily ascertainable," *Niaspan*, 67 F.4th at 129-130, and therefore is not "administratively feasible." Accordingly, class certification should be denied.

## IV.    CONCLUSION

WHEREFORE, for all the reasons set forth above, Defendant Trans Union LLC respectfully requests that this Court deny Plaintiff's Motion for Class Certification.

Dated: March 1, 2024

Respectfully submitted,

By: *s/ Michael O'Neil*

Michael O'Neil *(pro hac vice)*
Albert E. Hartmann *(pro hac vice)*
Kristen A. DeGrande *(pro hac vice)*
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
T: 312-207-1000
E: michael.oneil@reedsmith.com
E: ahartmann@reedsmith.com
E: kdegrande@reedsmith.com

Joshua M. Peles
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
T: 215-851-8100
E: jpeles@reedsmith.com

*Attorneys for Defendant Trans Union LLC*

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on the 1st day of March 2024, I have electronically filed the foregoing using the Court's CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

                                                  */s/ Michael O'Neil*
                                                  Michael O'Neil