**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM NORMAN BROOKS, III** | **CIVIL ACTION** |
| Plaintiff | |
| *v.* | **NO. 22-48-KSM** |
| **TRANS UNION LLC** | |
| Defendant | |

**MEMORANDUM**

**MARSTON, J.**                                                                                           **July 30, 2024**

Plaintiff William Norman Brooks, III, individually and on behalf of all others similarly situated, alleges that Trans Union violated section 1681e(b) of the Fair Credit Reporting Act when it sold third party creditors consumer reports that erroneously showed the consumers had filed for bankruptcy. Plaintiff seeks to certify a class of individuals about whom Trans Union allegedly sold similarly erroneous reports. Trans Union opposes Plaintiff's motion, and in support of its opposition, Trans Union seeks to use Corinne Wodzinski, a 20-year employee of the company, as an expert in Trans Union's algorithms for matching data and public records to consumer files. (*See* Doc. No. 52-2 (Wodzinski's expert report).) Plaintiff has moved to preclude Wodzinski's expert report and testimony as inadmissible under the standard outlined in Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (*See* Doc. No. 69.) Also, Plaintiff has moved to strike Trans Union's supplemental exhibit, (Doc. Nos. 52-4, 52-5, 52-6, 52-7), to Wodzinski's expert report. Before the Court is an amended joint motion to file redacted copies of certain documents filed in support of the parties' respective positions as to these pending motions.

## I.   BACKGROUND

The facts underlying this case are set out more fully in the contemporaneously filed Memorandum ruling on Plaintiff's Motion for Class Certification.  Because the Court writes primarily for the parties, we do not repeat those facts at length in this Memorandum, and instead, include only a brief overview of Plaintiff's claims and proposed class definition.

In January 2022, Plaintiff brought a putative class action complaint against Trans Union, which he amended the following month.  (Doc. Nos. 1, 13.)  Following two years of class discovery, Plaintiff now seeks to certify a single class of individuals seeking relief under § 1681e of the FCRA:

> All natural persons with an address in the United States and its Territories about whom Defendant sold a consumer report to a third party from January 6, 2020 to January 31, 2023 which included a bankruptcy remark on a tradeline, but with no reference to a bankruptcy record in the public record section of the same report, and for whom there is no government-held public record of a bankruptcy filing within ten (10) years prior to the date of the report.

(Doc. No. 47 at 10.)  Trans Union opposes class certification and has offered Corinne Wodzinski as an expert witness.  (*See* Doc. No. 52-2.)  Plaintiff has moved to strike Wodzinski's expert report and a supplemental exhibit thereto.  (Doc. No. 69.)  Previously a number of the documents related to these motions and oppositions were filed in redacted versions with certain exhibits filed entirely under seal.  (*See, e.g.*, Doc. Nos. 43, 47, 48, 49, 52, 56, 69.)

In May 2024, this case was reassigned on to the Honorable Karen Spencer Marston.  At that time, there were two pending motions to seal related to Trans Union's Brief in Opposition to Plaintiff's Motion to Strike (Doc. No. 82-1) and Plaintiff's Reply Brief in Support of Plaintiff's Motion to Strike (Doc. No. 82-2).  (Doc. Nos. 71, 74.)  The Court denied without prejudice both motions to seal, finding that the parties had not demonstrated that a sealing order was warranted under the standard outlined by the Third Circuit Court of Appeals in *In re Avandia Marketing,*

*Sales Practices & Products Liability Litigation,* 924 F.3d 662 (3d Cir. 2019).  (Doc. No. 79.)
Instead of filing renewed motions to seal, the parties filed their respective briefs on the public
docket.  (*See* Doc. No. 82.)  These briefs publicly revealed information that the Court had
previously placed under seal.

Subsequently, the Court raised *sua sponte* its intention to unseal the briefing and exhibits
related to the pending motions and directed the parties to re-examine the documents previously
redacted or filed under seal.  (Doc. No. 83.)  Before the Court is the parties Joint Motion to Seal
(Doc. No. 104), which requests leave to publicly file portions of the following exhibits with
targeted redactions:[1]

### Doc. No. 47 – Plaintiff's Motion for Class Certification:

| 47-1 | Ex. 1 | Trans Union Credit Report for Plaintiff dated January 15, 2020 |
|---|---|---|
| 47-3 | Ex. 4 | Deposition of Corinne Wodzinski |
| 47-9 | Ex. 19 | Deposition of Danielle Nowlin |
| 47-11 | Ex. 16 | Plaintiff's correspondence to Trans Union dated January 17, 2020 |
| 47-12 | Ex. 18 | Bank of America update to Trans Union dated January 17, 2020 |
| 47-14 | Ex. 20 | Trans Union credit report dated March 13, 2020 |
| 47-15 | Ex. 21 | Credco Instant Merge Credit Report dated March 11, 2020 |

---

[1] The Court previously unsealed Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for
Class Certification (Doc. No. 47) and Defendant's Opposition to Plaintiff's Motion for Class Certification
(Doc. No. 52).  (*See* Doc. No. 101.)  However, much of the briefing on Plaintiff's Motion for Class
Certification and Motion to Strike remains either under seal or redacted, namely Plaintiff's Reply in
Further Support of Motion for Class Certification (Doc. No. 58 (redacted)), Defendant's Sur-reply in
Opposition to Class Certification (Doc. No. 65 (sealed)), Plaintiff's Memorandum of Law in Support of
Motion to Strike (Doc. No. 69 (sealed)), Defendant's Opposition to Motion to Strike (Doc. No. 72
(sealed)), and Plaintiff's Reply in Further Support of Motion to Strike (Doc. No. 73 (redacted)). The
Court informed the parties of its intention to unseal all briefing in this matter during the telephone
conference held July 23, 2024, and the parties stated that they do not object.  In order to create a clean and
manageable docket regarding Plaintiff's pending motions, the Court's Order accompanying this
Memorandum instructs the parties to re-file, on the public docket, all of this briefing in sequential order.

| 47-16 | Ex. 22 | Annotated Fixed Format Response to Benchmark Funding dated March 11, 2020 |
| 47-20 | Ex. 26 | Deposition of Jonathan Jaffe |
| 47-22 | Ex. 29 | Declaration of Lauren KW Brennan |

### Doc. Nos. 49 & 52 – Defendant Trans Union's Opposition to Class Certification

| 49-1 | Ex. A | Plaintiff's First Supplemental Responses to Defendant's First Set of Interrogatories |
| 49-2 | Ex. B | Benchmark Funding Notice of Credit Denial dated March 11, 2020 |
| 52-2 | Ex. D | Rule 26(a)(2)(B) Report of Corinne Wodzinski |
| 52-3 | Ex. E | Declaration of Albert E. Hartmann |
| 52-4, 52-5, 52-6, 52-7 | Ex. F | Supplemental Exhibit to Rule 26(a)(2)(B) Report of Corinne Wodzinski |

### Doc. No. 58 – Plaintiff's Reply Brief in Further Support of Class Certification

| 58-3 | Ex. 33 | Annotated Chart Documenting SSN Inconsistencies |

(*See* Doc. No. 104 ¶ 15.)

The parties claim that these 16 exhibits "contain personal identifying information about non-parties, including possible class members and one witness," in addition to "consumer report" information that is protected under the FCRA. (*Id.* ¶ 4.) The parties therefore propose targeted redactions of this information and request leave to file redacted versions of these 16 exhibits on the public docket. (*See id.* ¶ 15.) The Court grants all but one of the parties' proposed redactions.

## II.     LEGAL STANDARD

A more rigorous standard applies when a party seeks to seal judicial documents than applies to protective orders shielding discovery materials. *See In re Avandia*, 924 F.3d at 672 ("A 'judicial record' is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." (cleaned up)). Once

a discovery document becomes a judicial record, the common law presumption of the right of public access attaches. *Id.* (citing *In re Cendant Corp.*, 260 F.3d 183, 192–93 (3d Cir. 2001)); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."). "This right antedates the Constitution, and promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, Civil No. 1:16-CV-2145, 2019 WL 5394575, at *4 (M.D. Pa. Oct. 22, 2019) (cleaned up). Because the documents will be filed as part of the public record regarding Plaintiff's Motion for Class Certification, they are "judicial records" to which the common law right of access attaches.

However, this right is not absolute and may be rebutted by a showing that an "interest in secrecy outweighs the presumption." *In re Avandia*, 924 F.3d at 672 (quoting *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). To meet this burden, the party requesting the sealing order must demonstrate that the "material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

In addition to the common law right of access, which attaches to all judicial records, the public also has a First Amendment right of access in civil trials, which attaches to certain judicial documents. *Id.* at 673. The First Amendment right of access presents an even higher burden than the common law right of access, and the party requesting that trial documents be sealed

must overcome strict scrutiny.  *Id.*  Specifically, the party must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Id.* (cleaned up).

Under either the common law or First Amendment standard, when a court analyzes a request for a sealing order, it must do so on a document-by-document basis, and the proponent of the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public.  *Id.*  Merely reciting the *Pansy* factors in seeking a sealing order is insufficient.[2]  *Id.* at 676–77 ("[T]he *Pansy* factors are not a substitute for the common law right of access standard — which begins with the presumption of access.").

Finally, certain categories of information are required to be sealed under this Court's local rules.  "Personal identifiers such as Social Security numbers, dates of birth, financial

---

[2] In analyzing a motion for protective order under Rule 26(c), the Court considers the *Pansy* factors, which ask whether:

1. Disclosure of the information will violate any privacy interests;

2. The information is being sought for a legitimate purpose or for an improper purpose;

3. Disclosure will cause a party embarrassment;

4. Confidentiality is being sought over information important to public health and safety;

5. The sharing of information among the litigants will promote fairness and efficiency;

6. A party benefitting from the order of confidentiality is a public entity or official; and

7. The case involves issues important to the public.

*In re Avandia*, 924 F.3d at 671.  Although they provide useful guidance when the court balances the public versus private interests under Rule 26(c), the *Pansy* factors "are not sufficiently robust for assessing the public's right to access judicial records."  *Id.* at 676; *see also In re Application of Storag Etzel GmbH*, Misc. C.A. No. 19-mc-209-CFC, 2020 WL 2949742, at *9 (D. Del. Mar. 25, 2020) ("In both substance and procedure, the burdens that must be overcome to justify the sealing of judicial records under the common law are dramatically less pliant than the factors to be weighed under *Pansy* in deciding whether a protective order is warranted.").  And neither the second *Pansy* factor nor the third factor are relevant in deciding whether to enter a sealing order.  *In re Avandia*, 924 F.3d at 676–77.

account numbers and names of minor children must be modified or partially redacted in all

documents filed either in paper or electronic form."  E.D. Pa. L.R. 5.1.3.

## III.     ANALYSIS

The parties have identified 16 previously sealed documents that they intend to file

publicly with the personal identifying information and credit account information of nonlitigants

redacted.  (*See* Doc. No. 104 ¶¶ 3, 15.)  They seek to maintain under seal the entirety of Exhibit 2

to the Declaration of Albert E. Hartmann, (*see id.* ¶ 11e), which contains both "screen shots or

excerpts of filings from PACER" showing the name and address of non-litigants and annotated

credit-report data produced by Trans Union showing the names, addresses, and credit histories of

non-litigants, (Doc. No. 52-3 ¶ 21).  Finally, they seek to maintain under seal docket sheet

printouts of bankruptcy proceedings filed by nonlitigants, which were found using the personal

identifying information that the parties propose to redact and attached to Trans Union's

supplemental exhibit to Wodzinski's report.  (*See* Doc. No. 104 ¶ 15p (Row 5 describing "Pages

16–173" of supplemental exhibit).)  Because the Court finds that the requested redactions,

Exhibit 2 to the Hartmann Declaration, and the docket sheet printouts of bankruptcy proceedings

attached to the supplemental exhibit all seek to protect the same information, the Court considers

these requests together.

### A.     *Common Law Right of Access*

Conscious that we must perform a document-by-document review, the Court directed the

parties to prepare a chart that identifies each document, the nature of the information redacted in

the document, and the justification for the redaction.  (*See* Doc. No. 79 ¶ 4, Doc. No. 85 ¶ 3a.)

Our review of the parties' chart and proposed redactions confirms that the parties, with one

exception, seek to seal only personally identifying and consumer credit information.

Specifically, the parties propose to seal the following categories of material:  (1) the names of

nonlitigants and potential class members; (2) the partial and full social security numbers of nonlitigants and potential class members; (3) the town of residence of nonlitigant witnesses; (4) the full and partial addresses of nonlitigants and potential class members; (5) the birthdates of nonlitigants and potential class members; (6) unique numbers—so-called "party ids" and "account ids"—that identify a single consumer's file within Trans Union's database of consumer credit information; (7) the bankruptcy court, docket number, filing dates, and docket sheets of nonlitigants and potential class members; and (8) so-called "consumer report information," containing both personally identifying information as well as credit account information of nonlitigants and potential class members.  (*See* Doc. No. 104 ¶ 15.)

In redacting each category of information, the parties claim to have sought to protect the personal identifying information and associated "consumer report information" of nonparties, including potential class members.  (*See id.* ¶ 16.)  As an initial matter, the Court notes that much of the information the parties seek to seal falls squarely within the set of required redactions enumerated in this Court's local rules—namely social security numbers, dates of birth, and financial account numbers.  *See* E.D. Pa. L.R. 5.1.3.  Furthermore, the Court finds that the personal identifying information of nonlitigants is "the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury" on nonparties, such that the common law presumption of access is overcome.  *In re Avandia*, 924 F.3d at 672.

First, the personal identifying information of nonparties is precisely "the kind of information that courts will protect."  *See Wartluft*, 2019 WL 5394575, at *3 (granting intervenor's motion to unseal judicial records, "subject to the redaction of the names and/or identifying information of third-parties in order to protect those individuals' privacy interests"); *Del Nero v. NCO Fin. Sys., Inc.*, No. 2:06-CV-04823-JDW, 2021 WL 2375892, at *2 (E.D. Pa.

June 10, 2021) (granting motion to seal to the extent it sought redactions of the movant's home and email addresses, the disclosure of which could subject him to continued death threats); *Three Brothers Supermarket Inc. v .United States*, Civil Action No. 2:19-cv-2003-KSM, 2020 WL 5749942, at *5 (E.D. Pa. Sept. 25, 2020) (granting sealing order after finding that "public disclosure of Tejada's and other individuals' full names, social security numbers, account numbers, household numbers, birthdates, and private addresses would harm those individuals' privacy and financial interests"); *cf. United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) ("Courts considering requests to keep certain documents sealed have, in general, lifted the seal on the entire record except for specific documents that . . . harm non-parties."); E.D. Pa. L.R. 5.1.3 (requiring redaction of certain personal identifying information, including "Social Security numbers, dates of birth, [and] financial account numbers").

Second, disclosure of this information "will work a clearly defined and serious injury" to the privacy interests of nonparties.  *See Wartluft*, 2019 WL 5394575, at *7 ("[W]hile we will provisionally grant the motion that these documents be unsealed, we will also direct the defendants redact the names or other identifying information within these documents concerning these nonparties to protect those third-party privacy interests . . . .").  A review of the proposed redactions and sealed documents confirms that each document contains sensitive identifying information about nonlitigants related to finances and credit accounts, including social security numbers and potentially associated bankruptcy filings.  In addition, the FCRA provides that "consumer reporting agencies" such as Trans Union may only disclose consumer report information under certain circumstances, including by order of a court.  *See* 15 U.S.C. § 1681b(a)(1).  In this matter, the Court issued such an order and designated as highly

confidential both "[a]ny information containing non-public personal information related to consumers" and all consumer report information as that term is defined in the FCRA.  (*See* Doc. No. 40 ¶ 2.)  Statutory restrictions on disclosure of consumer report information, which the Court has previously acknowledged in this case, underscore the injurious nature of disclosing sensitive personal identifying and consumer report information.  Thus, the parties have overcome the common law presumption of public access as to both personal identifying information and consumer report information.

One proposed redaction, however, covers neither personal identifying information nor consumer credit information, namely the salary information of Trans Union's putative expert witness, Corinne Wodzinski.  (*See id.* ¶ 15b (Row 2 describing proposed redactions to page 85 of Deposition of Corinne Wodzinski).)  Wodzinski was offered as an expert by Defendant Trans Union, which is also her longtime employer, and the amount that she is paid by Defendant is relevant to her credibility.  (*See* Doc. No. 47-3 at 84:4–86:24 (Deposition of Corinne Wodzinski) (exploring, in context of Wodzinski's salary estimation, how Wodzinski's bonuses are impacted by whether "supervisors perceive that [she is] doing well in [her] role").)  The Court is aware of no case in which the salary information of an expert witness has been redacted from the record, and it is not clear that the disclosure of approximate salary information will work a clear and definable injury against Wodzinski.  Thus, the Court denies leave to redact Wodzinski's salary information.

## B.     *First Amendment Concerns*

That does not end the analysis, however.  We must also determine whether the First Amendment is implicated by the proposed redactions, and if it is, whether the parties have overcome their constitutional burden.

It is unclear whether the First Amendment standard, in addition to the common law test, applies to a motion to seal class certification materials.[3]  *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM, 2023 WL 1100995, at *6 (E.D. Pa. Jan. 30, 2023).  However, absent clear guidance from the Third Circuit,[4] we apply "a two-prong test to assess whether the right of access attaches: (1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question."  *In re Avandia*, 924 F.3d at 673 (cleaned up).  With respect to prong one, the Third Circuit has found that "group litigation has a remarkably deep history dating back to medieval times."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) (cleaned up).  Thus, "class certification 'falls easily within the long history of open access to civil trials.'"  *Halman Aldubi*, 2023 WL 1100995, at *6 (quoting *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-cv-01609-JFC, 2019 WL 7606242, at *21 (W.D. Pa. Dec. 19, 2019), *report and recommendation adopted in part, rejected in part*, No. 10-1609, 2020 WL 337522 (W.D. Pa. Jan. 21, 2020)).  With respect to prong two, the Third Circuit has found public access to be "particularly compelling" in class actions, "because many members of the 'public' are also

---

[3] Although the documents at issue in this motion were first *revealed* in briefing regarding Plaintiff's motion to strike Defendant's expert report and a supplemental exhibit thereto, they were all originally filed as part of the record of Plaintiff's motion for class certification.  (*See* Doc. No. 82.)  Thus, the relevant question is whether the First Amendment standard applies to class certification materials, not disputes pursuant to Rule 702.

[4] As this Court has previously noted, there is conflicting guidance on this question from other circuits.  *See Halman Aldubi*, 2023 WL 1100995, at *6 n.4.  In the Fourth Circuit, the First Amendment right of access only applies to materials filed regarding dispositive motions.  *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988).  However, district courts in the Second Circuit have found that class certification materials implicate the First Amendment right of access.  *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016).

plaintiffs in the class action." *Id.* (quoting *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001)).  Thus, the Court assumes that the First Amendment right of access applies.

To overcome the First Amendment hurdle, the parties must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Avandia*, 924 F.3d at 673 (cleaned up).  As discussed above, the redacted information in the 16 exhibits identified by the parties constitutes personal identifying information and consumer report information of *nonlitigants.* And while the personally identifying information and consumer report information redacted here is not entirely irrelevant to the substantive issues before the Court—namely how to use this information to ascertain the class Plaintiff seeks to certify—neither the parties' substantive arguments nor the Court's class certification analysis relies on specific individually identifying or consumer credit information.  Given the collateral nature of this information, its redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings.  *See Mosaid Tech. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) (allowing redactions of confidential financial and licensing information because it "is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors").

In addition, redacting this information from the identified exhibits, as opposed to sealing the records wholesale, represents the least restrictive means available to protect the privacy interests at stake.  *See Carson v. N.J. State Prison*, Civil Action No. 17-6537(RMB), 2018 WL 4554465, at *2 (D.N.J. Sept. 21, 2018) ("The public interest in victims coming forward to assist in prosecution of crime is likely to suffer if victims' privacy rights are not protected.  Sealing the documents filed in this action that are replete with victim identifying information is the least

restrictive means available to protect the public and private interests at stake."); *Del Nero*, 2021 WL 2375892, at *2 ("[W]here possible, parties should propose redactions, rather than placing a whole document under seal.").  Redactions ensure the identifying information of nonlitigants is protected, while allowing the public to review and consider the nature of the class claims.

As for Exhibit 2 of the Hartmann Declaration and the bankruptcy docket printouts, targeted redactions of all personally identifying information and consumer report information would not be feasible.  First, Exhibit 2 of the Hartmann Declaration is replete with personally identifying information and credit account information that is frequently coded and has been aggregated in inconsistent formats.  (*See generally* Doc. No. 52-3, Ex. 2.)  Moreover, as Mr. Hartmann explains in his declaration, to locate the records that were combined to create Exhibit 2, Trans Union used the very personally identifying information that the Court today recognizes must be redacted.  (*See* Doc. No. 52-3 ¶¶ 5–6, 10–12, 14–21.)  The same is true of the bankruptcy docket printouts that were attached to the supplement to Wodzinski's report.  (*See* Doc. Nos. 52-4, 52-5, 52-6, 52-7.)  If the Court were not to seal those records that were returned on PACER and by Trans Union when the redacted materials were used as search terms, there is a very real possibility that the content of those redactions could be reverse engineered to reveal the same personal identifying information and consumer report information that the Court today recognizes must be sealed.  Thus, sealing Exhibit 2 to the Hartmann Declaration and the bankruptcy docket printouts is narrowly tailored to protecting the personal identifying information and consumer report information of nonlitigants that must be redacted for the reasons discussed above.

### C.      Patak Declaration

Finally, non-party Bank of America has stated that it does not object to the public filing of those portions of the Declaration of Neil Patak that are directly relevant to the present action. After the Court announced its intention to unseal the Declaration of Bank of America executive Neil Patak (Doc. No. 47-10), counsel for non-party Bank of America emailed to the Court the attached Declarations of Catalina Vergara and Mary Lee Trevino on July 16, 2024.  (*See* Doc. No. 104 ¶ 15c.)  These declarations confirm that Bank of America does not object to the public filing of any information upon which either the Court or the parties rely.  Bank of America only seeks to redact paragraphs 8-22, the final two sentences of paragraph 23, and paragraphs 26-29 of Patak's Declaration, asserting that these paragraphs contain detailed descriptions of Bank of America's internal business practices.  (See Vergara Declaration ¶ 4 (attached).)  The internal business practices of a non-party are entirely collateral to the issues before the Court.  The Court thus approves the public filing of those paragraphs from the Patak Declaration to which non-party Bank of America does not object.

### IV.     CONCLUSION

For the reasons discussed above, the Court finds all but one of the parties' proposed redactions and sealing requests are warranted under both the common law and the First Amendment.  Thus, the Court grants in part and denies in part leave to file redacted and sealed documents on the public docket.  An appropriate Order Follows.

**Catalina Vergara**
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope St., 18th Floor
Los Angeles, CA 90071
Telephone:  213.430.6000
Facsimile:  213.430.6407

*Attorney for Nonparty Bank of America, N.A.*


# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM NORMAN BROOKS, III,<br><br>     Plaintiff,<br><br>v.<br><br> TRANS UNION, LLC,<br><br>     Defendant. | Case No. 2:22-CV-00048-KSM<br><br>**DECLARATION OF CATALINA VERGARA IN SUPPORT OF CONTINUED SEALING OF CONFIDENTIAL DOCUMENTS PRODUCED BY NONPARTY BANK OF AMERICA, N.A.** |

I, Catalina Vergara, declare and state as follows:

   1.  I am a partner at O'Melveny & Myers LLP, counsel for nonparty Bank of America, N.A. ("BANA").  I submit this declaration in support of the continued sealing of Exhibit 15 to Plaintiff's motion for class certification (the "Patak Declaration"), which was previously sealed by the Court upon the parties' request.  *See* ECF 42 (Plaintiff's Motion to Seal); ECF 46 (Court's Order Granting Plaintiff's Motion to Seal).  I have personal knowledge of the following facts and, if called and sworn as a witness, could and would testify competently thereto.

2.      On Friday, July 12, Defendants' counsel advised me that the Court was reconsidering whether the excerpts of the parties' class certification briefing that quote or characterize the Patak Declaration—which excerpts had previously been redacted—meet the criteria for continued sealing. Having reviewed those excerpts, I can represent to the Court that nonparty BANA has no objection to the redactions being removed, and the excerpts being made available on the public docket.

3.      Yesterday, July 15, counsel for the parties further advised me that the Court was considering citing the Patak Declaration in its anticipated Order on Plaintiff's Motion for Class Certification. According to defense counsel, "The judge asked us to advise Bank of America that it had 24 hours to advise the court if BOA had some argument for keeping all or portions of the Declaration under seal."

4.      **Nonparty BANA <u>does</u> have a strong interest in maintaining the majority of the Patak Declaration under seal.** Specifically, paragraphs 8-22 and the final two sentences of paragraph 23 contain detailed descriptions of BANA's internal processes for assessing potential bankruptcies and acting upon notifications of potential bankruptcies sent by a BANA contractor, Lundquist Consulting, Inc. ("LCI"), as well as LCI's own confidential and proprietary processes for identifying potential bankruptcies. And Paragraphs 26-29 contain sensitive aggregate data about BANA customers that were collected in connection with (and relevant to) a separate litigation not involving TransUnion, *Brooks v. Bank of America*, Case No. 3:20-cv-01348-JO-BLM (S.D. Cal.). The disclosure of this commercially sensitive information about BANA's internal processes and customers would cause BANA the kind of serious competitive harm that justifies continued sealing. *See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).

   a.   Specifically with respect to the information contained in Paragraphs 8-23 of the Patak Declaration regarding BANA's and LCI's processes:   BANA derives an

economic benefit from maintaining the confidentiality of this information and could suffer competitive harm if it were disclosed because BANA's competitors, potential business partners, and other third parties would gain detailed information and insight into the confidential methods and procedures that BANA uses to deliver key services to its clients.

    b.  And with respect to the information contained in Paragraphs 26-29 regarding BANA customers: BANA has a responsibility to its customers to keep their information confidential.  BANA could suffer competitive harm if consumers lost confidence in BANA's ability to protect confidential consumer information.

5.    In support of the above, I have attached the Declaration of BANA employee Mary Lee Trevino, which was submitted in the *Brooks v. Bank of America* litigation in support of sealing the Patak Declaration (among other materials) in that case.  *See* Ex. A.  Should the Court require additional information to evaluate BANA's request to maintain Paragraphs 8-22, 23 (partial), and 26-29 under seal, BANA would respectfully request an opportunity to submit any such information and be heard on this issue.

Dated:  July 16, 2024

By:                                
                  Catalina Vergara

**Catalina Vergara**
cvergara@omm.com
O'MELVENY & MYERS LLP
400 South Hope St., 18th Floor
Los Angeles, CA 90071
Telephone:  213.430.6000
Facsimile:  213.430.6407

*Attorney for Nonparty Bank of America, N.A.*

# EXHIBIT A

CATALINA JOOS VERGARA (SBN 223775)
WILLIAM K. PAO (SBN 252637)
JONATHAN B. WAXMAN (SBN 294851)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071-2899
Telephone: +1 213 430 6000
Facsimile: +1 213 430 6407
cvergara@omm.com
wpao@omm.com
jwaxman@omm.com

DANIELLE OAKLEY MORRIS (SBN 246295)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: +1 949 823 6900
Facsimile: +1 949 823 6994
dmorris@omm.com

*Attorneys for Defendant*
*Bank of America, N.A.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM NORMAN BROOKS, III, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NA,<br><br>Defendant. | Case No. 3:20-cv-01348-JO-BLM<br><br>**DECLARATION OF MARY LEE TREVINO IN SUPPORT OF DEFENDANT'S MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>[Filed concurrently with: Defendant's Motion to File Documents Under Seal] |

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL

1

## DECLARATION OF MARY LEE TREVINO

2     I, Mary Lee Trevino, declare as follows:

3     1.     I am Vice President/Senior Operations Consultant at Bank of America,

4   N.A. ("BANA"). I am familiar with BANA's business practices and confidentiality

5   procedures. I submit this declaration in support of BANA's Motion to File

6   Documents Under Seal. I make this declaration based on my own personal

7   knowledge, and if called as a witness, I could and would competently testify to the

8   facts stated herein.

9     2.     BANA has moved to seal limited portions of BANA's Opposition to

10  Plaintiff's Motion for Class Certification ("Opposition"), certain exhibits attached

11  to the Declarations of Catalina Vergara ("Vergara Declaration") and Mary Lee

12  Trevino ("Trevino Opposition Declaration"), and the Declaration of Neil Patak

13  ("Patak Declaration"), all filed concurrently with BANA's Opposition to Plaintiff's

14  Motion for Class Certification. I have reviewed the portions of BANA's

15  Opposition and the documents that BANA seeks to keep under seal, and they reflect

16  BANA's confidential and sensitive information about BANA's customers, internal

17  policies and procedures, record-keeping practices, and relationships with third-party

18  vendors.

19    3.     The information BANA seeks to keep sealed is competitively

20  sensitive; BANA considers it to be, and treats it as, confidential and proprietary.

21  BANA does not disclose this information publicly or to third parties and limits its

22  disclosure to employees or directors who require it to carry out their duties.

23    4.     As for information about BANA's policies and procedures—as

24  contained in portions of the Opposition, the Patak Declaration, portions of Exhibit 3

25  of the Vergara Declaration, Exhibits 4–5 of the Vergara Declaration, and Exhibits

26  1–5 of the Trevino Opposition Declaration—BANA derives an economic benefit

27  from maintaining the confidentiality of this information and could suffer

28  competitive harm if it were disclosed because BANA's competitors, potential

- 2 -

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL

1   business partners, and other third parties would gain detailed information and

2   insight into the confidential methods and procedures that BANA uses to deliver key

3   services to its clients.

4        5.    As for information about BANA's customers—as contained in Exhibit

5   8 of the Trevino Opposition Declaration—BANA has a responsibility to its

6   customers to keep their information confidential. BANA could suffer competitive

7   harm if consumers lose confidence in BANA's ability to protect confidential

8   consumer information.

9        6.    Portions of BANA's Opposition contain confidential and proprietary

10  information relating to the Bank's internal policies and procedures and record-

11  keeping practices, and the confidential and proprietary policies and practices of

12  vendors with which the Bank does business. Furthermore, portions of the

13  Opposition include sensitive aggregate commercial data pertaining to BANA

14  customers. The disclosure of this information would cause BANA competitive

15  harm.

16       7.    The Patak Declaration contains confidential and proprietary

17  information relating to BANA's internal policies and procedures and record-

18  keeping practices, and the confidential and proprietary policies and practices of

19  vendors with which the Bank associates. Furthermore, the Patak Declaration

20  contains sensitive aggregate commercial data pertaining to BANA customers. The

21  disclosure of this information would cause BANA competitive harm.

22       8.    Exhibit 3 of the Vergara Declaration is excerpts from the transcript of

23  Neil Patak's January 11, 2022 deposition. Portions of this transcript contain

24  confidential and proprietary information about BANA's internal policies and

25  procedures and record-keeping practices, and the confidential and proprietary

26

27

28

- 3 -

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL

policies and practices of vendors with which the Bank associates, disclosure of which would cause BANA competitive harm.

9. Exhibit 4 of the Vergara Declaration is BANA's Responses and Objections to Plaintiff's First Set of Interrogatories dated September 10, 2021. The document contains confidential and proprietary information relating to the Bank's internal policies and procedures and record-keeping practices, and the confidential and proprietary policies and practices of vendors with which the Bank associates. Furthermore, the document contains sensitive aggregate commercial data pertaining to BANA customers. The disclosure of this information would cause BANA competitive harm.

10. Exhibit 5 of the Vergara Declaration is BANA's Third Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories dated January 6, 2022. The document contains confidential and proprietary information relating to the Bank's internal policies, and the confidential and proprietary policies and practices of vendors with which the Bank associates. Furthermore, the document contains sensitive aggregate commercial data pertaining to BANA customers. The disclosure of this information would cause BANA competitive harm.

11. Exhibit 1 of the Trevino Opposition Declaration titled "Statement of Work – LCI Bankruptcy, SCRA, and DCN Services" is a contract between BANA and Lundquist Consulting, Inc. ("LCI"), effective May 01, 2019. This document contains confidential and proprietary information regarding the terms of BANA's contractual relationship with LCI, and confidential and proprietary information about LCI's operations. Disclosure of this document would cause BANA competitive harm by damaging its relationship with LCI. Moreover, disclosure of such information could harm BANA's ability to effectively negotiate vendor contracts in the future.

12. Exhibit 2 of the Trevino Opposition Declaration is a version of BANA's "Bankruptcy - Enterprise Policy" dated February 18, 2014, and last

- 4 -

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL

reviewed on December 3, 2019, which contains confidential and proprietary information regarding BANA's processes related to customer bankruptcies. The release of this confidential policy document would cause BANA competitive harm by revealing confidential and proprietary information related to BANA's strategic priorities, risk management processes, and record-keeping procedures.

13.     Exhibit 3 of the Trevino Opposition Declaration is a version of BANA's "Bankruptcy Set-Up Review" procedure, effective March 25, 2019, which contains confidential and proprietary information regarding BANA's processes related to customer bankruptcies. The release of this confidential policy document would cause BANA competitive harm by revealing confidential and proprietary information related to BANA's risk management processes, record-keeping procedures, and quality control activities.

14.     Exhibit 4 of the Trevino Opposition Declaration is a version of BANA's "Automated Consumer Dispute Verification (ACDV) – Process," effective December 27, 2019, which contains confidential and proprietary information regarding BANA's processes related to dispute resolution and credit furnishing activities. The release of this confidential policy document would cause BANA competitive harm by revealing confidential and proprietary information related to BANA's risk management and dispute resolution processes, record-keeping procedures, and quality control activities.

15.     Exhibit 5 of the Trevino Opposition Declaration is a version of BANA's "Accounts Coded in Error – Consumer Card Bankruptcy" procedure, effective December 24, 2019, which contains confidential and proprietary information regarding BANA's processes related to customer bankruptcies, dispute resolution, and credit furnishing activities. The release of this confidential policy document would cause BANA competitive harm by revealing confidential and

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL

1  proprietary information related to BANA's risk management and dispute resolution
2  processes, record-keeping procedures, and quality control activities.
3      16.    Exhibit 8 of the Trevino Opposition Declaration are "Automated
4  Universal Dataforms" ("AUDs") for Plaintiff dated April 2, 2020; April 2, 2020;
5  March 3, 2020; and January 16, 2020, which contains confidential information
6  relating to Plaintiff, including account numbers and other sensitive financial
7  information. The disclosure of this document would cause BANA competitive
8  harm by revealing confidential customer information.
9
10      I declare under the penalty of perjury under the laws of the United States that
11  the foregoing is true and correct.
12
13  Date Executed: _4/6/2022_
14
15  Bank of America, N.A.
16  Name (Signature): _Mary Lee Trevino_
17  Name (Printed): _Mary Lee Trevino_
18  Title: _Vice President_
19
20
21
22
23
24
25
26
27
28

DECLARATION OF MARY LEE TREVINO
IN SUPPORT OF DEFENDANT'S MOTION
TO FILE DOCUMENTS UNDER SEAL