IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WILLIAM NORMAN BROOKS, III,**  Plaintiff,  v.  **TRANS UNION LLC,**  Defendant. | **CIVIL ACTION**  **NO. 22-0048-KSM** |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                      October 29, 2025

Plaintiff William Norman Brooks, III, individually and on behalf of all others similarly situated, alleges that Defendant Trans Union violated Section 1681e(b) of the Fair Credit Reporting Act ("FCRA") when it sold third-party creditors consumer reports that erroneously showed the consumers had filed for bankruptcy. Trans Union now moves to decertify the class, and Plaintiff opposes Trans Union's motion. Before the Court are two motions to seal portions of the memoranda and exhibits in support of the parties' respective positions. Because the parties seek to seal substantively the same information and make similar arguments, the Court addresses the motions together. For the reasons discussed below, the Court grants all the parties' proposed redactions and sealing.

**I.      BACKGROUND**

The facts underlying this case are set out more fully in the Memorandum ruling on Plaintiff's Motion for Class Certification. (*See* Doc. No. 116.) Because the Court writes primarily for the parties, the Court does not repeat those facts at length in this Memorandum, and instead, includes only a brief overview.

1

In January 2022, Plaintiff brought a putative class action complaint against Trans Union, which he amended the following month. (Doc. Nos. 1, 13.) In May 2024, this case was reassigned from the Honorable Gene E. K. Pratter to the Honorable Karen Spencer Marston. (Doc. No. 80.) Following two years of class discovery and oral argument on Plaintiff's motion for class certification, the Court granted certification of a single class of individuals seeking relief under Section 1681e of the FCRA:

> All natural persons with an address in the United States and its Territories about whom Defendant sold a consumer report to a third party from January 6, 2020 to January 31, 2023 which included a bankruptcy remark on a tradeline, but with no reference to a bankruptcy record in the public record section of the same report, and for whom there is no government-held public record of a bankruptcy filing within ten (10) years prior to the date of the report.

(Doc. No. 117 at 1.) The Court previously granted in part the parties' joint motion to seal materials related to the motion for class certification. (Doc. No. 105.) Trans Union now moves for decertification, which Plaintiff opposes. (Doc. Nos. 139, 145.) Before the Court are the parties' respective Motions to Seal (Doc. Nos. 140, 146), which request leave to publicly file portions of the following memoranda and exhibits with targeted redactions:

| *Doc. No.* | *Title* |
|---|---|
| 139-1 | Memorandum in Support of Trans Union's Motion for Class Decertification |
| 139-3 | Exhibit A – March 12, 2025, Expert Report of Jonathan Jaffe |
| 139-4 | Exhibit B – April 22, 2025, Supplemental Expert Report of Jonathan Jaffe |
| 139-6 | Exhibit D – June 20, 2025, Expert Report of David Alfaro |
| 145 | Plaintiff's Memorandum in Opposition to Defendant's Motion for Class Decertification |
| 145-7 | Exhibit 6 – Chart |
| 145-9 | Exhibit 8 – Exhibit B to Expert Report of David Alfaro |

The parties claim that these seven documents contain "personal identifying information

about nonparties," "consumer report' information subject to the requirements of the Fair Credit Reporting Act," and bankruptcy record information of nonlitigant/class members which reveals personal identifying information. (Doc. No. 140 at 1; Doc. No. 146 at 1.)

## II.     LEGAL STANDARD

A more rigorous standard applies when a party seeks to seal judicial documents than applies to protective orders shielding discovery materials. *See In re Avandia*, 924 F.3d 662, 672 (3d Cir. 2019) ("A 'judicial record' is a document that has been filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." (cleaned up)). Once a discovery document becomes a judicial record, the common law presumption of the right of public access attaches. *See id.* (citing *In re Cendant Corp.*, 260 F.3d 183, 192–93 (3d Cir. 2001)); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993) ("We believe that our earlier decisions and those in other courts lead ineluctably to the conclusion that there is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith."). "This right antedates the Constitution, and promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *Wartluft v. Milton Hershey Sch. & Sch. Tr.*, No. 1:16-CV-2145, 2019 WL 5394575, at *4 (M.D. Pa. Oct. 22, 2019) (cleaned up). Because the documents will be filed as part of the public record regarding Trans Union's Motion for Decertification, they are "judicial records" to which the common law right of access attaches.

This right is not absolute, however, and may be rebutted by a showing that an "interest in secrecy outweighs the presumption." *In re Avandia*, 924 F.3d at 672 (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986)). To meet this

burden, the party requesting the sealing order must demonstrate that the "material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

In addition to the common law right of access, the public also has a First Amendment right of access in civil trials, which attaches to certain judicial documents. *Id.* at 673. The First Amendment right of access presents an even higher burden than the common law right of access, and the party requesting that trial documents be sealed must overcome strict scrutiny. *Id.* Specifically, the party must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (cleaned up).

Under either the common law or First Amendment standard, when a court analyzes a request for a sealing order, it must do so on a document-by-document basis, and the proponent of the sealing order must articulate with specificity the injury that would result if the particular document or parts of it were made public. *See id.*[1] Parties must do more than merely identifying

---

[1] In analyzing a motion for protective order under Rule 26(c), the court considers the *Pansy* factors, which ask whether:

    1. Disclosure of the information will violate any privacy interests;
    2. The information is being sought for a legitimate purpose or for an improper purpose;
    3. Disclosure will cause a party embarrassment;
    4. Confidentiality is being sought over information important to public health and safety;
    5. The sharing of information among the litigants will promote fairness and efficiency;
    6. A party benefitting from the order of confidentiality is a public entity or official; and
    7. The case involves issues important to the public.

*In re Avandia*, 924 F.3d at 671. Although they provide useful guidance when the court balances the public versus private interests under Rule 26(c), the *Pansy* factors "are not sufficiently robust for

and reciting the factors courts consider when reviewing a proposed sealing order. *See id.* at 676–77 ("[T]he *Pansy* factors are not a substitute for the common law right of access standard—which begins with the presumption of access.").

Finally, certain categories of information are required to be sealed under this Court's local rules. "Personal identifiers such as Social Security numbers, dates of birth, financial account numbers and names of minor children must be modified or partially redacted in all documents filed either in paper or electronic form." E.D. Pa. L. Civ. R. 5.1.3.

### III.    ANALYSIS

Both Trans Union and Plaintiff seek to file documents publicly with redactions of personal identifying information and credit account information of nonlitigants and potential class members; printouts of bankruptcy proceedings filed by nonlitigants and potential class members; and consumer reports. Plaintiff also seeks to file the entirety of Exhibit 6 to Plaintiff's Memorandum in Opposition to Trans Union's Motion under seal. The information sought to be sealed and redacted is similar to the information presented earlier in the parties' Joint Motion to Seal, which the Court granted. (*See* Doc. No. 105.) And, because the Court finds that the parties' requested redactions seek to protect the same information, the Court considers these requests together.

#### A.    *Common Law Right of Access*

Conscious that this Court must perform a document-by-document review, the parties prepared charts that identifies each document, the nature of the information redacted in the

---

assessing the public's right to access judicial records." *Id.* at 676; *see also In re Application of Storag Etzel GmbH*, No. 19-MC-209-CFC, 2020 WL 2949742, at *9 (D. Del. Mar. 25, 2020) ("In both substance and procedure, the burdens that must be overcome to justify the sealing of judicial records under the common law are dramatically less pliant than the factors to be weighed under Pansy in deciding whether a protective order is warranted."). And neither the second *Pansy* factor nor the third factor are relevant in deciding whether to enter a sealing order. *In re Avandia*, 924 F.3d at 676–77.

document, and the justification for the redaction when moving for information to be sealed. (Doc. No. 140 at 6–8; *see also* Doc. No. 79 ¶ 4.)  The Court's review of the parties' charts and proposed redactions confirms that the parties seek to seal only personally identifying, bankruptcy, and consumer credit related information.  Specifically, the parties both propose to seal the following categories of material: (1) the names of nonlitigants and potential class members; (2) the partial and full social security numbers of nonlitigants and potential class members; (3) the town of residence of nonlitigant witnesses; (4) the full and partial addresses of nonlitigants and potential class members; (5) the birthdates of nonlitigants and potential class members; (6) unique numbers—so-called "PartyIDs" and "account IDs"—that identify a single consumer's file within Trans Union's database of consumer credit information; (7) the bankruptcy court, docket number, filing dates, and docket sheets of nonlitigants and potential class members; and (8) so-called "consumer report information," containing both personally identifying information as well as credit account information of nonlitigants and potential class members.  (*See* Doc. No. 140 at 6–8; Doc. No 146 at 5.)

In redacting each category of information, the parties claim to have sought to protect the personal identifying information and associated "consumer report information" of nonparties, including potential class members.  (*See* Doc. No. 140 at 3; Doc. No. 146 at 2.)  As an initial matter, the Court notes that much of the information the parties seek to seal falls squarely within the set of required redactions enumerated in this Court's local rules—namely, social security numbers, dates of birth, and financial account numbers.  *See* E.D. Pa. L. Civ. R. 5.1.3. Moreover, personal identifying information of nonlitigants and potential class members is "the kind of information that courts will protect and that disclosure will work a clearly defined and

serious injury" on nonparties, such that the common law presumption of access is overcome. *In re Avandia*, 924 F.3d at 672 (quotation marks omitted).

As the Court concluded in the earlier Memorandum (Doc. No. 105 at 8–9), personally identifying information of nonparties is precisely the kind of information that courts protect, and disclosure of this information would result in a clearly defined and serious injury to the privacy interests of nonparties. *See, e.g.*, *Del Nero v. NCO Fin. Sys., Inc.*, No. 2:06-CV-04823-JDW, 2021 WL 2375892, at *2 (E.D. Pa. June 10, 2021) (granting motion to seal to the extent it sought redactions of the movant's home and email addresses, the disclosure of which could subject him to continued death threats); *Three Bros. Supermarket Inc. v. United States*, No. 2:19-CV-2003-KSM, 2020 WL 5749942, at *5 (E.D. Pa. Sep. 25, 2020) (granting sealing order after finding that "public disclosure of Tejada's and other individuals' full names, social security numbers, account numbers, household numbers, birthdates, and private addresses would harm those individuals' privacy and financial interests"); *cf. United States ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) ("Courts considering requests to keep certain documents sealed have, in general, lifted the seal on the entire record except for specific documents that . . . harm non-parties.") (cleaned up); E.D. Pa. L. Civ. R. 5.1.3 (requiring redaction of certain personal identifying information, including "Social Security numbers, dates of birth, [and] financial account numbers"); *Wartluft*, 2019 WL 5394575, at *7 ("[W]hile we will provisionally grant the motion that these documents be unsealed, we will also direct the defendants redact the names or other identifying information within these documents concerning these nonparties to protect those third-party privacy interests . . . ."). Further, the FCRA provides that "consumer reporting agencies" such as Trans Union may only disclose consumer report information under certain circumstances, including by order of a court. *See* 15 U.S.C. §

1681b(a)(1).  Here, the Court issued a protective order and designated highly confidential both "[a]ny [i]nformation containing non-public personal information related to consumers" and all consumer report information as that term is defined in the FCRA.  (*See* Doc. No. 40 ¶ 2.)  Accordingly, the parties have overcome the common law presumption of public access as to both personal identifying information and consumer report information.

### B.     *First Amendment Concerns*

This Court must also determine whether the First Amendment is implicated by the proposed redactions, and if it is, whether the parties have overcome their constitutional burden.  This Court applies "a two-prong test to assess whether the right of access attaches: (1) the experience prong asks whether the place and process have historically been open to the press; and (2) the logic prong evaluates whether public access plays a significant positive role in the functioning of the particular process in question."  *In re Avandia*, 924 F.3d at 673 (cleaned up).[2]  With respect to the first prong, the Third Circuit has found that "group litigation has a remarkably deep history dating back to medieval times."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) (cleaned up).  Thus, "class certification 'falls easily within the long history of open access to civil trials.'"  *Halman Aldubi*, 2023 WL 1100995, at *6 (quoting *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-CV-01609-JFC, 2019 WL 7606242, at *21 (W.D. Pa. Dec. 19, 2019), *report and recommendation adopted in part, rejected in part*, No. 10-CV-1609, 2020 WL 337522 (W.D. Pa. Jan. 21, 2020)).  With respect to the second prong, the Third Circuit has found public access to be "'particularly compelling' in class actions, 'because

---

[2] It is unclear whether the First Amendment standard, in addition to the common law test, applies to a motion to seal class decertification materials.  *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM, 2023 WL 1100995, at *6 (E.D. Pa. Jan. 30, 2023).  However, absent clear guidance from the Third Circuit, this Court applies the two-prong test to assess whether the right of access attaches.

many members of the "public" are also plaintiffs in the class action.'" *Id.* (quoting *In re Cendant Corp.*, 260 F.3d at 193). Accordingly, the Court assumes that the First Amendment right of access applies.

To overcome the First Amendment hurdle, the parties must demonstrate "an overriding interest in excluding the public based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re Avandia*, 924 F.3d at 673 (cleaned up). As discussed above, the information the parties seek to redact constitutes personal identifying information and consumer report information of nonlitigants and potential class members. While the information is not entirely irrelevant to the issues before the Court, neither of the parties' substantive arguments rely on specific individually identifying or consumer credit information. (*See* Doc. No. 140 at 3.) The public can thus learn and understand the parties' substantive arguments without needing to learn the names or other personal identifying information of nonlitigants and potential class members. (Doc. No. 146 at 3.) Given the collateral nature of this information, its redaction only marginally affects the public's right to access materials filed in relation to judicial proceedings. *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 510 (D. Del. 2012) (allowing redactions of confidential financial and licensing information because it "is the type of information which, while largely incidental to the substantive issues in this case, could cause real and serious harm to the parties' future negotiations if disclosed to competitors").

Furthermore, redacting this information from the identified exhibits represents the least restrictive means available to protect the privacy interests at stake. *See Carson v. N.J. State Prison*, No. 17-6537(RMB), 2018 WL 4554465, at *2 (D.N.J. Sept. 21, 2018) ("Sealing the documents filed in this action that are replete with victim identifying information is the least

9

restrictive means available to protect the public and private interests at stake."); *Del Nero*, 2021 WL 2375892, at *2 ("[W]here possible, parties should propose redactions, rather than placing a whole document under seal."). Redactions ensure the identifying information of nonlitigants and potential class members is protected, while allowing the public to review and consider the nature of the class claims.

As for Exhibit 6 to Plaintiff's Memorandum in Opposition to Trans Union's Motion, targeted redactions of all personally identifying information and consumer report information would not be feasible. Exhibit 6 is replete with personally identifying information and consumer report information that is frequently coded and has been aggregated in inconsistent formats. (*See generally* Doc. No. 145-6, Ex. 6.) As explained by Lauren Brennan, Esquire, in her declaration, Exhibit 6 was developed using Alfaro's report and comparing the Trans Union consumer report data with the potential bankruptcy information. (*See* Doc. No. 145-1 ¶ 9.) Accordingly, sealing Exhibit 6 to Plaintiff's Memorandum is narrowly tailored to protect the personal identifying information and consumer report of nonlitigants and potential class members that must be redacted for the reasons discussed above.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds all the parties' proposed redactions and sealing requests are warranted under both the common law and First Amendment. Accordingly, the Court grants both parties leave to file redacted and sealed documents on the public docket. An appropriate Order follows.