**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIAM NORMAN BROOKS, III,** *on behalf of himself and all similarly situated consumers,* | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 22-0048-KSM** |
| **TRANS UNION LLC,** | |
| Defendant. | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                                                              **July 6, 2026**

Plaintiff William Norman Brooks, III, individually and on behalf of all others similarly

situated, alleges that Defendant Trans Union violated Section 1681e(b) of the Fair Credit

Reporting Act ("FCRA") when it sold third-party creditors consumer reports that erroneously

showed the consumers had filed for bankruptcy.   After four years of extensive litigation, the

parties have reached a class action settlement agreement.   Presently before the Court is

Plaintiff's motion for preliminary approval of the class action settlement, settlement agreement,

proposed schedule, notices for class members, and claim form.   (*See* Doc. Nos. 172-1, 172-2.)

For the reasons below, the Court grants Plaintiff's motion for preliminary approval.

**I.      Background**

The facts of this case are set out more fully in the Court's Memorandum granting

Plaintiff's Motion for Class Certification.   (*See* Doc. No. 116.)   Because the Court writes

primarily for the parties, the Court does not repeat those facts at length in this Memorandum, and

instead, only includes a brief overview of Plaintiff's claims and class certification, before

moving into the terms of Plaintiff's proposed settlement agreement, and finally, the Court's analysis of the same.

### A. Class Certification

In January 2022, Plaintiff brought a putative class action complaint against Trans Union, which he amended the following month.   (Doc. Nos. 1, 13.)   The amended complaint brings claims under the FCRA and its California analogue.   (Doc. No. 13 ¶¶ 49, 56–65.)   In May 2024, this case was reassigned from the late Honorable Gene E.K. Pratter to the Honorable Karen Spencer Marston.   (Doc. No. 80.)   Following two years of class discovery and briefing and oral argument on Plaintiff's motion for class certification, the Court granted certification of a single class of individuals seeking relief under Section 1681e of the FCRA:

> All natural persons with an address in the United States and its Territories about whom Defendant sold a consumer report to a third party from January 6, 2020 to January 31, 2023 which included a bankruptcy remark on a tradeline, but with no reference to a bankruptcy record in the public record section of the same report, and for whom there is no government-held public record of a bankruptcy filing within ten (10) years prior to the date of the report.

(Doc. No. 116.)

Plaintiff proposed a two-step process for determining class membership.   First, Plaintiff's proposed expert Jonathan Jaffe examined Trans Union's internal files to determine which of the files sold to a third party between January 6, 2020 and January 31, 2023 included a tradeline with a bankruptcy remark, but failed to include a record of bankruptcy in the public record section of the file ("Step One").   (Doc. No. 116 at 6.)   Second, Jaffe used the full nine-digit social security numbers ("SSNs") to run Public Access to Court Electronic Records system

("PACER") searches to determine whether the SSN was associated with a bankruptcy filed within the past ten years ("Step Two").   (*Id.* at 6–7.)

While Trans Union opposed class certification (*see* Doc. No. 48), the Court rejected Trans Union's arguments that the class was not ascertainable, including Trans Union's argument that using an individual's nine-digit SSN was not sufficiently accurate and that Trans Union's proposals for other pieces of information should be matched during Step Two.   (Doc. No. 116 at 20–21.)   The Court also concluded that the commonality and predominance requirements were met.   (*Id.* at 30–39.)

Following this ruling, on the eve of the parties' second scheduled mediation, Trans Union moved for decertification on July 31, 2025 (Doc. No. 139), which the Court denied on December 2, 2025.   (Doc. No. 145.)   The Court determined that decertification was inappropriate because Trans Union did not present a change of circumstances that would justify decertification.   (*Id.* at 29.)

With the assistance of the Magistrate Judge Carol Sandra Moore Wells, the parties reached a settlement in principle on March 5, 2026.   (Doc. No. 169.)   Subsequently, Judge Wells vacated all existing deadlines in the Court's Scheduling Order (Doc. No. 159) to allow the parties further time to negotiate the specific details of the class settlement and draft the settlement agreement and necessary papers.

On April 23, 2026, Plaintiff filed an initial unopposed motion for preliminary approval of the class action settlement.   (Doc. No. 172-1.)   In the motion, Plaintiff includes the proposed settlement agreement and the proposed notices for class members.   (*See* Doc. No. 172-2.)   The Court held a hearing on the motion on June 25, 2026.   (Doc. No. 175.)

II.     **Terms of the Proposed Settlement Agreement[1]**

The settlement agreement contains the following provisions:

A.     **Injunctive Relief**

For a period of five years after the date the settlement agreement is approved, Trans Union agrees to maintain reasonable procedures to prevent dissemination of consumer reports to third parties that contain any reference to bankruptcy (regardless of whether the reference to a bankruptcy is signified by words, code, or numbers) unless a bankruptcy is referenced in the public record section of the report or Trans Union's records otherwise indicate that bankruptcy should be reflected for the consumer who is the subject of the report.   (Doc. No. 172-1 at 9; Doc. No. 172-2 at 8.)

B.     **Payments to Class Members**

Trans Union will create an $8,310,000.00 Settlement Fund that will be used to provide monetary relief to settlement class members, to pay class counsel's fees and expenses, to pay a class representative service award, and to pay the costs of notice and administration of the settlement.   (Doc. No. 172-1 at 10.)

Under the terms of the proposed settlement agreement, all members of the settlement class are eligible to receive monetary payments from the Settlement Fund.   (*Id.*)   The preliminary settlement agreement proposes a bifurcated approach to payments from the Settlement Fund for the members of the class.   The settlement class is divided into a No

---

[1] Unless otherwise noted, terms such as "class" have the meanings ascribed in the parties Class Action Agreement and Release, Definitions Section.   (*See* Doc. No. 172-2 at 3–7.)

Bankruptcy Group[2] and an Aged Bankruptcy Group[3].   Plaintiff asserts that "[b]ecause members of the Aged Bankruptcy Group would face additional risks if the case were to move forward, the Settlement gives preferred benefits to members of the No Bankruptcy Group to reflect their better litigation position."   (Doc. No. 172-1 at 10.)

*Automatic Payments.*   Members of the No Bankruptcy Group will receive an automatic payment of $100.00 without the need to submit a claim.   (Doc. No. 172-2 at 17.) Approximately $2,100,000.00 of the Settlement Fund is reserved to provide No Bankruptcy Group class members with automatic payments.   (*Id.*)   Members of the Aged Bankruptcy Group will <u>not</u> receive these automatic payments.

*Valid Claim Payments.*   Approximately $2,882,000.00 of the Settlement Fund is reserved for payments to settlement class members (including both No Bankruptcy Group members and Aged Bankruptcy Group members) who submit valid claims.[4]   (Doc. No. 172-1 at 11.)   Each class members's payment will be calculated by dividing the class member's individual pro rata points by the aggregate total number of pro rata points assigned to all

---

[2] "No Bankruptcy Group" refers to those members of the settlement class for whom, according to the analysis conducted by Plaintiff's expert Jonathan Jaffe and set forth in his April 22, 2025 Supplemental Report, there is no locatable public record of a bankruptcy with the same nine-digit SSN as on the Trans Union consumer report giving rise to class membership.   (Doc. No. 172-2 at 5.)

[3] "Aged Bankruptcy Group" refers to those members of the settlement class for whom, according to the analysis conducted by Plaintiff's expert Jonathan Jaffe and set forth in his April 22, 2025 Supplemental Report, the only locatable public record of a bankruptcy with the same nine-digit SSN as on the Trans Union consumer report giving rise to class membership was filed more than ten years prior to the date of that report.   (Doc. No. 172-2 at 7.)

[4] To be eligible for the additional payment, the settlement class member must submit a completed and signed claim form in which they certify under penalty of perjury that one or more of the following is true: (i) "My Trans Union credit score decreased as a result of the inclusion of bankruptcy information in my file"; or (ii) "I was denied credit, and one reason for the denial was the inclusion of bankruptcy information on a Trans Union credit report."   (Doc. No. 172-2 at 61 ("Exhibit F").)

claiming class members.   (Doc. No. 172-1 at 11.)   No Bankruptcy Group members who submit a valid claim will receive three pro rata points, and Aged Bankruptcy Group members who submit a valid claim will receive one individual pro rata point.   (*Id.*)

Plaintiff asserts that "[b]ased on estimates derived from similar litigation as well as from typical claims rates data for similar cases obtained from the Settlement Administrator, Plaintiff expects that [c]laiming [c]lass [m]embers in the No Bankruptcy Group will receive payments of approximately $1,000, in addition to their automatic payment of $100." (*Id.*)   Class members in the Aged Bankruptcy Group who submit valid claims are expected to receive approximately $350.   (*Id.*)   Plaintiff asserts that the class notice forms make clear that the exact amounts of recovery cannot be known before claims are actually submitted, so the actual recoveries may differ from these estimates based on historical data.   (Doc. No. 171-2 at 11.)

The settlement agreement also provides that if, after distribution of the Settlement Fund, any funds remain that would allow $10 or more to be paid to all settlement class members who cashed their previous check, there will be a second distribution to all class members who submitted a valid claim.   (Doc. No. 172-1 at 11.)   Then, after the second distribution, or, if there is no second distribution due to insufficient funds, any remaining funds will be distributed as *cy pres* to two non-profit charitable organizations whose "goals are aligned with consumer interests, and the funds shall be used for purposes of consumer credit education, counseling, advocacy or financial literacy."   (Doc. No. 172-1 at 11–12; Doc. No. 172-2 at 9.)   One *cy pres* recipient will be selected by class counsel, and the other will be selected by Trans Union.   (Doc. No. 172-2 at 9.)   The *cy pres* recipients shall be identified in connection with the motion for final approval of the settlement agreement and subject to the Court's approval.   (*Id.*)

### C.    Attorneys' Fees & Costs; Service Award to Plaintiff

Plaintiff and class counsel seek an award of attorneys' fees of one-third of the Settlement Fund, or $2,770,000.   (Doc. No. 171-1 at 12; Doc. No. 172-2 at 16.)   Plaintiff also seeks reimbursement of litigation expenses up to $308,000.00, and Trans Union agrees not to object to a request within this parameter.   (Doc. No. 172-2 at 16.)   In addition, Plaintiff seeks a one-time individual settlement and service award for the class representative up to a maximum of $50,000 for for his service to the class and in recognition of his additional individual claims.   (*Id.*) Plaintiff states that the specific request for this award "shall be made as part of the Final Approval Motion."   (*Id.*)

### D.    Class Notice and Administration

The parties have chosen Continental DataLogix, LLC, to serve as the Settlement Administrator.   (Doc. No. 172-1 at 12; Doc. No. 172-2 at 10.)   Continental DataLogix was previously retained by the parties in this action to provide notice to the settlement class following the Court's certification decision in May 2025.   (Doc. No. 172-1 at 12.)

Within ten calendar days after entry of Court's preliminary approval order, Trans Union will provide the Settlement Administrator with an updated class list that includes the most recent email and mailing address in Trans Union's records for the individuals contained in the No Bankruptcy Group and Aged Bankruptcy Groups.   (Doc. No. 172-2 at 11.)   Within thirty calendar days, the Settlement Administrator will establish a toll-free phone number that settlement class members can call if they have questions about the settlement.   Within sixty calendar days after approval, the Settlement Administrator will email the settlement notice to each member of the settlement class for whom it has obtained an email address.   (*Id.*)   In the

7

event that the Settlement Administrator is unable to obtain a working email address for a class member, the settlement notice will be sent via USPS mail.   (*Id.*)   This approach is consistent with the notice provided by Continental DataLogix following the Court's initial certification decision.   (Doc. No. 172-1 at 12.)

The Settlement Administrator will also update the existing website for this class action, www.BrooksBankruptcyClassAction.com, with the preliminary settlement agreement, settlement notice, preliminary approval order from the Court, and any other relevant documents.   (Doc No. 172-2 at 10.)

Class members will have the opportunity to opt out of the settlement or to object and/or appear at the Court's final settlement approval hearing by following the procedures set forth in the settlement agreement and notice.   (*See* Doc. No. 172-2 at 13–14).[5]   Objections, exclusions, and claim submissions are due 120 calendar days after entry of the preliminary approval order. (Doc. No. 172-1 at 24.)

The parties expect the cost of issuing notice and all other administrative expenses (including claims processing and payments) to be $210,000, and Trans Union agrees to pay this sum out of the Settlement Fund within seven calendar days after the preliminary settlement agreement is approved.   (*Id.* at 8.)

---

[5] If five percent or more of the class members request exclusion from the settlement, Trans Union shall have the right to terminate the agreement and will have no further obligations under the agreement unless Trans Union waives such a right in writing.   (Doc. No. 172-2 at 14.)

### E.      Right to Object

The settlement agreement provides an opportunity for class members to object by mailing a notice of objection to the Settlement Administrator and to the Clerk of Court[6] within 120 calendar days after the Court's entry of the preliminary approval order.   (Doc. No. 172-1 at 24; Doc. No. 172-2 at 14.)   Objectors are directed to include specific reasons for the objection, including any legal support the class member wishes to bring to the Court's attention, and any evidence the class member would like to include in support of the objection.   (Doc. No. 172-1 at 14.)   Objectors who wish to be heard at the Court's final approval hearing must file their intent to appear at least fourteen days before the hearing, which the parties propose to occur 145 days after the entry of the preliminary approval order.   (Doc. No. 171-1 at 24.)

### F.      No Reverter

The settlement agreement provides that no unclaimed, undelivered, or uncashed funds from the Settlement Fund will revert to Trans Union.   (Doc. No. 172-1 at 13.)   To the extent that checks are not presented for payment within sixty calendar days of mailing, the uncashed checks will become null and void.   (Doc. No. 172-2 at 18.)   As discussed previously in Section II.B., if there are sufficient funds remaining after the first round of payments are administered, there will be a second distribution, and/or funds will be distributed to the selected *cy pres* recipients.

---

[6] Objectors can also file their objection with the Court via ECF.   (Doc. No. 172-2 at 14.)

9

**G.    Release**

After the final settlement agreement is approved by the Court, the settlement class agrees to release Trans Union from all claims relating to the reporting of bankruptcy remarks on tradelines.[7]  (Doc. No. 172-2 at 19.)

**H.    Proposed Schedule**

Plaintiff proposes, and the parties' settlement agreement contemplates, the following schedule for the settlement agreement approval process.   (Doc. No. 172-1 at 24.)

| Event | Date |
|---|---|
| Entry of Preliminary Approval Order | Day 0 |
| Settlement Fund Established with initial payment of $210,000.00 for Class Administration | Day 7 |
| Settlement Notice issued to the Settlement Class | Day 60 |
| Class Counsel to file Motion for Award of Attorneys' Fees and Expenses | Day 106 (or 14 days before objection deadline) |
| Claims Submission Deadline/ Exclusion Deadline/ Objection Deadline | Day 120 |

---

[7]  Specifically, "[t]he Class Representative and each Settlement Class Member waive and release any and all provisions, rights, and benefits conferred either: (i) by section 1542 of the California Civil Code; or (ii) by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Section XIV [sic] hereto."  (Doc. No. 172-2 at 19.)   Section 1542 of the California Civil Code reads:

> **Section 1542. Certain claims not affected by general release.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

(*Id.*)

| Deadline for Filing Intent to Appear at Final Approval Hearing | 14 Days before Final Approval Hearing |
|---|---|
| Deadline for Plaintiff's Counsel to File Motion for Approval of Class Action Settlement | 14 Days before Final Approval Hearing |
| Final Approval Hearing | Day 145, or thereafter as ordered by the Court |

## III.    Preliminary Approval of the Settlement Agreement – Rule 23(e)

Preliminary approval of a proposed class action settlement is left to the discretion of the trial court and is based on an examination of whether the proposed settlement is "likely" to be approved under Rule 23(e)(2).   Fed. R. Civ. P. 23(e)(1)(B)(i); *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").   Preliminary approval is not a commitment to approve the final settlement.   "[R]ather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"   *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06cv4453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007)).

The Court may approve a proposed class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]"   Fed. R. Civ. P. 23(e)(2).   Rule 23(e)(2) of the Federal Rules of Civil Procedure provides multiple factors to consider as part of this determination, including whether (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for

11

the class is adequate; and (4) the proposal treats all class members equitably relative to each other.   Fed. R. Civ. P. 23(e)(2).   The Court addresses each factor in turn below, and finds that the factors weigh in favor of preliminary approval.

### A.    Adequate Representation

Plaintiff William Norman Brooks, III, has adequately represented the class as class representative.   In certifying the class, the Court previously determined that his claims are "typical of the claims . . . of the class" and that he "will fairly and adequately protect the interests of the class."   (Doc. No. 116 at 41.)   Plaintiff has served as class representative over the last four years, and the Court has no reason to believe that his adequacy as class representative has changed since the Court certified the class on August 1, 2024.   (*Id.*)   In addition, "he has not taken part in any side deals."   *Katz v. DNC Servs. Corp.*, No. 16cv5800, 2023 WL 2955887, at *8 (E.D. Pa. Apr. 14, 2023).   As part of his representation of the class and in resolution of this separate individual claims which are subject to a broader release, Plaintiff seeks a one-time service award in the amount of $50,000.   Following the Court's oral argument on June 24, 2026, upon request of the Court, the Plaintiff provided revised notices which more clearly explain that the proposed service award covers both Plaintiff's service to the class and his individual claims against Tran Union that are not covered by this class action.   The Court will render its final review of the proposed service award at the time of the final approval hearing.[8]

---

[8] Service awards are regularly granted to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of mandatory laws."   *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011).   However, the award must not be "unreasonably high."   *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001); *see e.g., Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06cv1833, 2020 WL 1922902, at *33 (E.D. Pa. Apr. 21, 2020) (granting a $15,000 service award to the consumer plaintiff); *Lincoln Adventures LLC v. Those Certain Underwriters at*

Class counsel has also adequately represented the class.   In this matter, Francis Mailman Soumilas, P.C. has successfully litigated the case by participating in extensive class-certification discovery and engaging in mediation to reach a settlement-in-principle in January 2025.   (Doc. No. 34 at 1; Doc. No. 169.)   Francis Mailman Soumilas, P.C. has "served as class counsel in over 70 class actions" and "has been recognized for specialized expertise in litigating FCRA cases such as this one."   (Doc. No. 116 at 29.)   *See McIntyre v. RealPage, Inc.,* No. 18cv03934, 2023 WL 2643201, at \*3 n.5 (E.D. Pa. Mar. 24, 2023) (noting the firm's "significant experience litigating [FCRA] class actions" and "particular skill and efficiency" in representing the class).

Thus, the Court finds that this factor weighs in favor of settlement approval.

### B.      Arm's-Length Negotiations

The settlement negotiations here occurred at arm's length; settlement was only reached after more than four years of extensive litigation, several mediation sessions with a private mediator, and following a settlement conference conducted by Judge Wells.   (Doc. No. 172-1 at 6.)   *See also In re Wawa Data Sec. Litig.*, No. 19cv6019, 2021 WL 3276148, at \*8–9 (E.D. Pa. July 30, 2021) (holding that the settlement negotiations were conducted at arm's length where a "highly-experienced mediator" assisted with the parties' negotiations).

### C.      Adequate Relief

Next, the Court determines whether the settlement provides adequate relief by taking into

---

*Lloyd's, London Members*, No. 08cv00235, 2019 WL 4877563, at \*8 (D.N.J. Oct. 3, 2019) (finding the proposed service awards of $15,000 to each of the two named plaintiffs "to be fair and reasonable, and not excessive" where the class representatives "diligently and patiently monitored [the] case for over a decade, provided documents and information requested by Defendants; reviewed with their counsel important pleadings; sat for full-day depositions" and participated in mediation sessions); *Alvarez v. BI Inc.*, No. 16cv2705, 2020 WL 1694294, at \*6 (E.D. Pa. Apr, 6, 2020) (finding a service award of $15,000 to be reasonable due to the significant risks taken on by the named plaintiffs) (collecting cases).

account (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (c) the terms of any proposed award of attorney's fees, including timing of payment; and (d) any agreement required to be identified under Rule 23(e)(3).   Fed. R. Civ. P. 23(e)(2)(C).

### 1. The costs, risks, and delay of trial and appeal

The Court finds that the settlement agreement is reasonable in light of the best possible recovery and attendant risks of continued litigation.   As this case was filed in January 2022, Plaintiff has incurred substantial risk by litigating this case for more than four years and reviewing more than fifteen thousand pages of discovery documents produced by Trans Union. (Doc. No. 172-1 at 16.)   If the parties' preliminary settlement agreement were not accepted, the parties would be briefing dispositive motions and preparing pretrial submissions at this time.   In addition, the Court agrees with Plaintiff that class certification in this matter "involved complex questions about the mechanics of bankruptcy reporting, reporting inaccuracy, prior bankruptcy reporting litigation, and technical procedures in the credit reporting industry."   (Doc. No. 172-1 at 17.)   Continuing towards a trial disposition of this case would likely require further specialized expertise and millions of dollars in attorneys' fees.   Plaintiff also faces an appeal risk, particularly in light of the Court's denial of Trans Union's motion for class decertification. (Doc. No. 139.)   Given these considerations, the Court finds the settlement reasonable in light of the attendant risks of continued litigation.

### 2. The effectiveness of any proposed method of distributing relief to the class

The Court holds that the proposed method of distributing relief[9] to the class is effective. Fed. R. Civ. P. 23(e)(2)(ii).   The Court is satisfied that the parties have effective means to ensure that class members receive distributions, including an easy-to-understand claim form (Doc. No. 172-2 at 61), adequate mechanisms for class members to request payment through alternative methods, and processes for the Settlement Administrator to obtain updated addresses for class members in the event that the mailed settlement notice is returned as undeliverable. (Doc. No. 172-2 at 61 ("Exhibit F"); Doc. No. 172-1 at 19.)   The Court also is satisfied that the parties' proposed settlement notices provide easy-to-understand information for class members to learn about the settlement, including whether they are designated as a member of the Aged Bankruptcy Group or No Bankruptcy Group, what these designations mean, how to opt out, how to object, and how to attend the final approval hearing.   (Doc. No. 172-2 at 42 ("Exhibit C"); Doc. No. 172-2 at 45 ("Exhibit D"); Doc. No. 172-2 at 48 ("Exhibit E").)

### 3. Terms of any proposed award of attorney's fees

Class counsel seeks $2,770,000, which equals 30 percent of the total fund.   (Doc. No. 172-1 at 12.)   On its face, the Court finds this award appears fair, reasonable, and adequate. *See Mabry v. Hildebrandt*, No. 14cv5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases demonstrating the percentage of recovery award in FLSA common fund cases ranges from roughly 20 to 45 percent in the Third Circuit).

---

[9] The Court addresses the parties' proposed bifurcation of settlement payments in Section III.D., Equitable Treatment of Class Members Relative to Each Other.

15

####    4.    *Agreement identified under Rule 23(e)(3)*

Rule 23(e)(2)(C)(iv) of the Federal Rules of Civil Procedure provides that in considering whether a proposed settlement is fair, the court must consider whether any agreement among the parties exists outside of the settlement agreement as identified in Rule 23(e)(3).   And Rule 23(e)(3) in turn provides that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal."   Fed. R. Civ. P. 23(e)(3).   Here, the parties have not identified any such agreement, so this factor is neutral.

### D.    Equitable Treatment of Class Members Relative to Each Other

Last, the Court considers whether the proposed settlement agreement "treats class members equitably relative to each other."   Fed. R. Civ. P. 23(e)(2)(D).   "[T]here is no rule that settlements benefit all class members equally," so long as any differences are "rationally based on legitimate considerations."   *Bennet v. Schnader Harrison Segal & Lewis LLP*, No. 24cv592, 2026 WL 202548, at *4 (E.D. Pa. Jan. 1, 2026) (citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981)).   And the Third Circuit has stated that "[v]aried relief among class members with differing claims is not unusual.   Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class."   *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (citations omitted).   Courts in the Eastern District of Pennsylvania have held that "division of the settlement proportionate to the amount of loss is considered an equitable distribution."   *Bennet*, 2026 WL 202548, at *4 (first citing *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16cv2724, 2025 WL 2777570, at *7 (E.D. Pa. Sept. 26, 2025) (finding that pro rata distribution of settlement fund treats class members equitably

16

relative to each other because recovery is proportional to class members' loss) and then citing (*McDermid v. Inovio Pharms., Inc.*, No. 20cv01402, 2023 WL 227355, at \*6 (E.D. Pa. Jan. 18, 2023) (same)).

Here, the settlement agreement bifurcates the settlement class for purposes of the settlement agreement into a No Bankruptcy Group and Aged Bankruptcy Group.   (Doc. No. 172-1 at 10–22.)   On its face, the settlement agreement preferences class members in the No Bankruptcy Group, who will receive automatic $100 payments, and, if they submit a valid claim, will receive three pro rata points and an approximate $1,000 payment thereafter.   (*Id.*) Alternatively, members of the Aged Bankruptcy Group will not receive automatic payments. Class members in the Aged Bankruptcy Group who submit valid claims will receive one pro rata point and are expected to receive a $350 payment.

As rationale for this bifurcation, Plaintiff's motion asserts that "[b]ecause members of the Aged Bankruptcy Group would face additional risks if the case were to move forward, the [s]ettlement gives preferred benefits to members of the No Bankruptcy Group to reflect their better litigation position."   (Doc. No. 172-1 at 10.)   At the Court's hearing on June 25, 2026, Plaintiff's counsel further explained if the case were to move forward, Defendant has asserted that they would be making further defenses to the Aged Bankruptcy Group's accuracy, including potentially an Article III standing challenge.   (Doc. No. 175.)   As such, Plaintiff believes that the No Bankruptcy Group's preferred litigation position is reflected in the bifurcated approach to payments.

The Court agrees and finds that the parties' payment proposal satisfies the requirements of Rule 23(e)(2)(d).   "Rule 23(e)(2)(D) requires that class members be treated equitably, not

identically."  *Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023).   And here, the class payments are "rationally based on legitimate considerations."   *See Bennett*, 2026 WL 202548, at *4.

## IV.   Notice

The Court is also satisfied that the form and content of the notices to the settlement class are adequate.   "The notice to the proposed class must be the 'best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'"   *Katz*, 2023 WL 2955887, at *7 (citing Fed. R. Civ. P. 23(c)(2)(B)). Additionally, principles of due process "require[] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"   *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).   The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out.   *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

Here, the Court finds that the requirements of Rule 23 and due process are satisfied by the parties' proposed notice plan.   As discussed above in Sections II.D. and II.H., within ten calendar days after entry of the Court's preliminary approval order, Trans Union will provide the Settlement Administrator with an updated class list containing contact information for class members.   (Doc. No. 172-2 at 11.)   Within thirty calendar days, the Settlement Administrator will establish a toll-free phone number that Settlement Class members can call if they have questions about the settlement.   The Settlement Administrator will also update the existing class

website with notice of the settlement.   Within sixty calendar days after approval, the Settlement

Administrator will email the settlement notice to each member of the settlement class for whom

it has obtained an email address.   (*Id.*)   In the event that the Settlement Administrator is unable

to obtain a working email address for a class member, the settlement notice will be sent via

USPS mail.   (*Id.*)     If it is returned as undeliverable, and USPS does not provide an updated

address, the Settlement Administrator shall attempt to obtain an updated address from one or

more commercial search firms or databases, and shall then re-mail the notices to any such

updated address.   (Doc. No. 172-2 at 11.)

Moreover, the Court is satisfied that the content of the proposed email, mail, and legal

notices satisfies Rule 23 and due process. The notices explain, in plain language, the genesis of

the lawsuit, who the interested parties are, the terms of the settlement, the process for opting out

of the settlement, the process for objecting to the settlement, and the consequences of opting out

or objecting to the settlement.   (*See generally* Doc. 172-2 at 41–58.)

As written, the proposed notices will ensure that "interested parties [are apprised] of the

pendency of the action and afford them an opportunity to present their objections."   *In re Nat'l*

*Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

## V.     Appointing Settlement Administrator

Parties may use class notice experts or professional claims administrators to provide a

class notice and otherwise administer a settlement.   Fed. R. Civ. P. 23 note(c)(2) (2018).

Continental DataLogix,[10]   the proposed Settlement Administrator, has previously been retained

---

[10] Continental DataLogix has served as a Settlement Administrator in several other recent class action cases, including: *Berryman v. Avantus*, No. 21cv1651, 2024 WL 2108824, at \*3 (D. Conn. May 10,

by counsel in this case to provide notice to class members following the Court's certification decision.   (Doc. No. 172-1 at 12.)   The Court appoints Continental DataLogix to serve as the Settlement Administrator and administer the settlement in good faith in accordance with the terms of the settlement agreement.

## VI.    Conclusion

The parties' proposed settlement was negotiated by experienced counsel with the help of a federal magistrate judge.   It provides significant benefits to the class members.   The Court is satisfied that preliminary approval is appropriate.   Accordingly, Plaintiff's motion for preliminary approval of the settlement agreement is granted.   The final settlement hearing is scheduled for **December 2, 2026.**

An appropriate order follows.

---

2024); *Ramirez v. Trans Union LLC,* No. 12cv00632, 2022 WL 2817588, at *8 (N.D. Cal. July 19, 2022); and *Wilson v. Trans Union LLC,* No. 23cv00131, 2025 WL 2244204, at *9 (S.D. Ind. Aug. 6, 2025).